**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfonso MENDOZA–FERNANDEZ,
Defendant–Appellant.**

No. 92–50761.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1993.

Decided Sept. 10, 1993.

Patrick N. Smith, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Edward B. Moreton, Jr., Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WOOD, Jr.,* REINHARDT, and RYMER, Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge:

Defendant contends the district court misinterpreted the United States Sentencing Commission's Guidelines Manual and applied the wrong guideline. We agree, and for the reasons stated below we vacate Defendant's sentence and remand for resentencing.

## I. BACKGROUND

Not many of us carry around $51,000 in cash, but Alfonso Mendoza–Fernandez was doing so on August 5, 1992. As Fernandez prepared to board a flight to Mexico from the Los Angeles International Airport, he was stopped by an inspector for the United States Customs Service. The inspector was conducting what the government terms "an

* The Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

outbound currency examination." In other words, he was checking passengers to see how much money they were carrying.

Speaking in English, the inspector informed Mendoza–Fernandez it was legal to transport money out of the country but that Mendoza–Fernandez must tell the inspector if he was carrying more than $10,000 in cash or checks. Mendoza–Fernandez stated he understood the law. The inspector then asked Mendoza–Fernandez how much money he was carrying and Mendoza–Fernandez responded that he had approximately five to six thousand dollars in his boot, wallet, and pocket. At the inspector's request, Mendoza–Fernandez produced the money which totaled $5,500. The inspector asked Mendoza–Fernandez if that was all the money he was carrying. Mendoza–Fernandez replied it was.

The inspector's attention then switched to Mendoza–Fernandez's carry-on duffle bag. In response to the inspector's questions, Mendoza–Fernandez stated that there was no money in his bag, that he had packed the bag, and that everything inside the bag belonged to him. Opening the duffle bag, the inspector found six bundles of cash wrapped in socks and bed sheets. The cash totaled approximately $45,600. When the inspector asked Mendoza–Fernandez about the money, Mendoza–Fernandez replied that he spoke very little English and began to give his responses in Spanish.

Mendoza–Fernandez was taken to another examination area, an agent was brought in who spoke Spanish, and that agent advised Mendoza–Fernandez in Spanish that he was under arrest for illegal exportation of currency exceeding $10,000 without proper notification to the Customs Service. The agent then read Mendoza–Fernandez his *Miranda* rights. A few days later a grand jury indicted Mendoza–Fernandez for having "knowingly and willfully" made a "false statement as to a material fact" regarding a matter within the jurisdiction of a United States agency. On October 6, 1992, two months after attempting to board the plane, Mendoza–Fernandez pled guilty to this violation of 18 U.S.C. § 1001.

On December 7, 1992, Mendoza–Fernandez appeared in district court for a sentencing hearing. The court adopted the sentencing recommendation contained in the probation officer's presentence report. The report noted that the sentencing guideline customarily applied to violations of 18 U.S.C. § 1001 is § 2F1.1. That guideline is entitled "Fraud and Deceit" and sets a base offense level at six. An application note to the guideline, however, states that due to the many offenses that may be prosecuted under 18 U.S.C. § 1001, another sentencing guideline may fit the facts of the case more closely. In that case, the other guideline should be used:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute. Examples include ... false statements to a customs officer, for which § 2T3.1 likely would be more apt.... Where the indictment or information setting forth the count of conviction ... establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1.

U.S.S.G. § 2F1.1, comment. (n. 13).

Heeding the application note, the presentence report recommended using another guideline. Instead of applying § 2T3.1 as an alternative to § 2F1.1, which the application note itself recommends, the presentence report recommended applying § 2S1.4. Guideline § 2T3.1 covers "Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property." This guideline is located in Part T of the Guidelines Manual, which handles "Offenses Involving Taxation." Guideline § 2S1.4 is for "Failure to File Currency and Monetary Instrument Report"; it is found in Part S of the Manual, directed at "Money Laundering and Monetary Transaction Reporting."

Guideline § 2S1.4 sets a base offense level at nine. The presentence report reduced that offense level by two levels in recognition of Mendoza–Fernandez's acceptance of responsibility for his crime pursuant to § 3E1.1. The total offense level was thus seven. It is difficult to tell what Mendoza–Fernandez's total offense level would have

been had the probation officer and the court followed guideline § 2T3.1. The base offense level is tied to the tax loss that defendant's conduct caused to the government. Here, there may have been no such loss. Neither the probation officer nor the district court determined how § 2T3.1 should be applied in such cases and we shall not attempt the task now. Had guideline § 2F1.1 been used, and a two level reduction been granted for acceptance of responsibility, Mendoza–Fernandez would have had a total offense level of only four.

The report classified Mendoza–Fernandez as having a criminal history category of V (five) for a lengthy series of offenses. According to the guideline's sentencing table, a criminal history category of V and an offense level of seven yields a possible imprisonment of twelve to eighteen months. An offense level of four yields a sentence of only four to ten months. However, having accepted § 2S1.4 as the proper guideline, and seven as the offense level, the district court sentenced Mendoza–Fernandez to eighteen months, the upper end of the possible range.

## II. ANALYSIS

Mendoza–Fernandez contends the district court erred in applying guideline § 2S1.4. Mendoza–Fernandez correctly notes that § 2S1.4, the "Failure to File Currency and Monetary Instrument Report" guideline, applies to violations of 31 U.S.C. § 5316. That statute covers "Reports on exporting and importing monetary instruments." Having instead been charged with, and having pled guilty to, a violation of 18 U.S.C. § 1001, Mendoza–Fernandez argues § 2F1.1 is the appropriate guideline. In his opinion, the court should have applied § 2F1.1, found an offense level of four, and sentenced him from four to ten months.

The government argues § 2F1.1 does not fit Mendoza–Fernandez's behavior. It characterizes the guideline as being designed for defendants whose false statements or schemes are designed to obtain money by fraud or deceit. The government believes Mendoza–Fernandez's false statements were not made to defraud the United States of any money, taxes, or duty. Noting application note 13 to guideline § 2F1.1, the government argues it is permissible to look to another guideline that better matches Mendoza–Fernandez's conduct.[1] In the government's view, the district court correctly viewed § 2S1.4 as the appropriate match.

We review de novo the district court's decision to apply this guideline. *See United States v. Baclaan,* 948 F.2d 628, 630 (9th Cir.1991) (court reviews de novo construction and interpretation of the sentencing guidelines). Our analysis is guided by *United States v. Carrillo–Hernandez,* 963 F.2d 1316 (9th Cir.1992), whose facts are almost identical to this case.

In *Carrillo–Hernandez* the defendants were leaving this country for Mexico when a customs inspector stopped them for a currency examination. The defendants told the inspector they were not carrying money in excess of $10,000. After further questioning, the defendants admitted carrying in excess of $31,000. The defendants were convicted of violating 18 U.S.C. § 1001. At sentencing the court applied guideline § 2S1.3, "Failure to Report Monetary Transactions; Structuring Transactions to Evade Reporting Requirements." The court applied this section after first consulting application note 13 to § 2F1.1 and finding that guideline inapplicable. This court found the trial judge erred.

In vacating and remanding for resentencing, we stated that there was a difference between making a false entry and making a

---

1. The Assistant United States Attorney incompletely cites the relevant commentary to this guideline. The attorney fails to mention the application note's remark that where "false statements to a customs officer" are concerned, guideline "§ 2T3.1 likely would be more apt" than § 2F1.1. U.S.S.G. § 2F1.1, comment. (n. 13).

    When we pointed out this omission to the attorney at oral arguments, counsel assured us he had not tried to deliberately mislead this court. We recognize that Defendant had not raised the issue of whether § 2T3.1 should apply and also that the focus of this appeal was whether to apply § 2F1.1 or § 2S1.4. Regardless, we trust the Assistant United States Attorney will in the future take more care when editing guidelines.

false statement to a customs official. Application note 13, we found, "unequivocally points to U.S.S.G. § 2T3.1 as the 'more apt' guideline for 'false statements to a customs official.' Accordingly, appellants should have been sentenced under § 2T3.1, rather than under section 2S1.3." 963 F.2d at 1317. The court did not accept the government's position that § 2T3.1 was inapplicable since that section is designed to address violations involving revenue collection or trade regulation:

> We reject the government's argument. The Introductory Commentary to section 2T3.1 does not foreclose the application of that guideline to this case. First, the regulation of currency exports can be viewed as "trade regulations" within the meaning of the Introductory Commentary. Second, the Introductory Commentary says the guideline is "primarily" aimed at revenue collection or trade regulation, not "exclusively."

963 F.2d at 1318.

The court recognized that the Guidelines Manual instructs judges to look to the most analogous guideline when there is no guideline directly on point. *See* U.S.S.G. § 2X5.1. The court felt § 2T3.1 was that guideline for the defendants' crime: "Here, the offense most analogous to making false statements to a customs agent in the course of evading *export* restrictions is the making of false statements to a customs agent in the course of evading *import* restrictions." 963 F.2d at 1318.

The only notable difference between *Carrillo–Hernandez* and the case before us is the fact that § 2S1.4 was enacted after the defendants in *Carrillo–Hernandez* were sentenced.[2] That guideline became effective on November 1, 1991. We do not, however, believe the addition of § 2S1.4 would have changed the analysis in *Carrillo–Hernandez*. We reach this conclusion by noting that prior

to November 1, 1991, the language in § 2S1.3 was much closer to the defendants' crimes than § 2S1.4 is now. Regardless, the *Carrillo–Hernandez* court found § 2T3.1 to be the more suitable guideline.[3]

A valid argument could be made that § 2S1.4 is as reasonable an analogy as § 2T3.1, *see United States v. Obiuwevbi,* 962 F.2d 1236, 1242 & n. 2 (7th Cir.1992), but no sufficient justification exists to reexamine our holding in *Carrillo–Hernandez*. Moreover, the recent case of *Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), would seem to direct that we apply § 2T3.1 even in the absence of *Carrillo–Hernandez. See Stinson,* —— U.S. at ——, 113 S.Ct. at 1915 (commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"). On the facts of this case, we find *Carrillo–Hernandez* to be controlling and hold the district court should look to § 2T3.1 as the appropriate guideline when sentencing Mendoza–Fernandez.

### III. CONCLUSION

The district court erred in applying § 2S1.4; the Defendant's sentence is hereby vacated and the case remanded for resentencing pursuant to guideline § 2T3.1.

VACATED AND REMANDED FOR RESENTENCING.

RYMER, Circuit Judge, dissenting:

I respectfully dissent for the simple reason that Mendoza–Fernandez never argued—either in the district court or on appeal—that U.S.S.G. § 2T3.1 was the Guidelines section most applicable to the offense for which he was convicted. Mendoza–Fernandez's narrow contention was that the district court

---

2. Although the *Carrillo–Hernandez* case does not reflect the fact, our records show the defendants were sentenced in January 1991.

3. Prior to its amendment in November 1, 1991, § 2S1.3 provided a basic offense level at 13 "if the defendant ... made false statements to conceal or disguise the evasion of reporting requirements." After amendment, all references to false

statements were deleted from § 2S1.3 and its commentary. Likewise, there is no reference to false statements in either § 2S1.4 or its commentary. *See generally United States v. Wales,* 977 F.2d 1323, 1327–28 & n. 2 (9th Cir.1992) (discussing amendment of § 2S1.3 and enactment of § 2S1.4).

incorrectly sentenced him pursuant to U.S.S.G. § 2S1.4, rather than under the more appropriate U.S.S.G. § 2F1.1. As *United States v. Carillo-Hernandez,* 963 F.2d 1316 (9th Cir.1992), clearly states that "U.S.S.G. § 2F1.1 ... is inapplicable" to convictions for making a false statement to a United States Customs official in violation of 18 U.S.C. § 1001, *id.* at 1317, I believe that we must affirm the judgment of the district court.