**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

**v.**

**Domenico CEFALU, Appellant–**
**Cross–Appellee.**

**Nos. 787, 890, Dockets 95–1225, 95–1269.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 22, 1995.

Decided June 4, 1996.

Joseph W. Ryan, Jr., Uniondale, NY (M. Elisabeth Bergeron, Uniondale, NY, on the brief), for Appellant–Cross–Appellee.

Andrew Weissmann, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Eastern District of New York, David C. James, Assistant United States Attorney, Brooklyn, NY, of counsel), for Appellee–Cross–Appellant.

Before: KEARSE, MAHONEY and PARKER, Circuit Judges.

PARKER, Circuit Judge:

## I.

## BACKGROUND

Defendant Cefalu was convicted and sentenced for criminal contempt in the United States District Court for the Eastern District of New York, Judge Edward R. Korman. After several lengthy sentencing hearings, the court sentenced defendant to thirty-three months imprisonment pursuant to 18 U.S.C. § 3553(b). Both the defendant and the government appeal the sentence. Because we find no error, we affirm the district court.

A grand jury called defendant to appear as a witness in an investigation of Patsy Conte, a captain in the Gambino family. Defendant was granted immunity and he offered testimony before the grand jury; however, at a certain point he refused to answer any further questions. Defendant was held in civil contempt by the district court, Judge Reena Raggi. He served eighteen months, the maximum time, in jail for civil contempt and was released on February 6, 1994.

Meanwhile, on December 23, 1993, he was called to testify in the *Conte* trial.[1] Conte was charged with conspiracy to distribute heroin. Defendant was again granted immunity, refused to testify and was held in civil contempt. His confinement for this civil contempt lapsed on January 4, 1994, when the *Conte* trial concluded. The court declared a mistrial because of a hung jury.

. The grand jury returned an indictment charging defendant with criminal contempt for his refusal to testify during the *Conte* trial. On February 6, 1994, after completing his civil contempt sentence, defendant was arraigned on the criminal contempt indictment. He waived his right to a jury trial. At a bench trial before Judge Korman he offered no evidence in his own defense and was found guilty of criminal contempt in violation of 18 U.S.C. § 401.

## II.

## DISCUSSION

In this case, we review a sentencing judge's efforts to wind his way through the Sentencing Guidelines and the relevant statutory provisions. Judge Korman expressed some frustration with the fact that there is no clear guideline provision covering one of the most standard forms of contempt: refusal to testify in violation of a valid court order. While we appreciate the court's concern, we also understand the Commission's hesitancy to prescribe a particular sentencing range for a crime that is as highly variable and context specific as contempt. Given the vague sentencing provision for contempt, Judge Korman did a commendable job of working through the various relevant provisions, ultimately fashioning a rational, appropriate sentence for the defendant.

### A. *The Contempt Guideline*

The Contempt guideline, § 2J1.1 of the United States Sentencing Guidelines

---

1. Judge I. Leo Glasser presided over the *Conte* trial.

("USSG"), directs the district court to apply USSG § 2X5.1 when imposing a sentence for criminal contempt. In the absence of a sufficiently analogous guideline, Section 2X5.1 references 18 U.S.C. § 3553(b). Explaining the lack of a specific sentencing range for contempt, the Commission stated:

> Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the Commission has not provided a specific guideline for this offense.

USSG § 2J1.1, comment (n. 1). Section 2X5.1 states that the court is to apply the most analogous offense guideline, or if there is no sufficiently analogous guideline, to proceed under the provisions of 18 U.S.C. § 3553(b), applying the guidelines and policy statements to the extent they are applicable. The statute provides:

> In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in [18 U.S.C. § 3553] subsection (a)(2).... [T]he court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C. § 3553(b)(1994).[2] The legislative history of § 3553(b) explains that "[t]his language is necessary to provide for the situation where there may be no guideline." H.R.Rep. No. 797, 99th Cong., 2d Sess. 19 (1986), reprinted in 1986 U.S.C.C.A.N. 6138, 6142. Thus, in cases in which the crime does not fit neatly within any of the guidelines, the statutory provision gives the court some direction in sentencing. In such cases, the sentencing judge has considerable discretion to fashion an appropriate sentence for the crime.

The structure of the guidelines for contempt and the Commission's clear recognition that the crime is a highly varied one suggest that in certain circumstances there will be no applicable sentencing guideline for contempt. *See United States v. Underwood,* 880 F.2d 612, 619 (1st Cir.1989) (holding that there is no applicable sentencing guideline for contempt).[3] A sentence imposed for an offense for which there is no applicable sentencing guideline will only be reversed if it is plainly unreasonable. 18 U.S.C. § 3742(e)(4) (1994). Thus, we must determine first whether there is a sufficiently analogous guideline, and if not, whether the sentence is plainly unreasonable.

### B. *Other Potentially Applicable Guidelines*

■ Cefalu maintains that USSG § 2J1.5, the guideline for Failure to Appear by a Material Witness, is the most analogous guideline. This provision derives from the statute concerning people released on bail who wilfully fail to appear in court. 18 U.S.C. § 3146(a) (1994). Judge Korman found that the Failure to Appear guideline was not sufficiently analogous because it did not address the seriousness of the crime being prosecuted in the *Conte* case. Judge Korman went on to determine that Cefalu acted in bad faith because he sat in open court and refused to obey a lawful order of the court.

In arguing that Failure to Appear by a Material Witness is the most analogous guideline, Cefalu relies primarily on *United States v. Underwood,* 880 F.2d 612 (1st Cir. 1989), in which the court held that a three

---

2. The purposes set forth in subsection (a)(2) include promoting respect for the law, reflecting the seriousness of the crime, providing just punishment for the offense, deterring future crime, protecting the public, and providing the defendant with training, care, and other correctional treatment. 18 U.S.C. § 3553(a)(2).

3. The Contempt guideline was amended in 1989. The pre-amendment provision directed the court to "impose a sentence based on stated reasons and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." USSG § 2J1.1 (1988). The application note to the provision directed the court to 2X5.1. *Id.,* comment (n. 1). That provision does not differ significantly from the amended provision, thus the analysis in *Underwood* remains relevant.

year sentence imposed by the district court for refusal to testify was plainly unreasonable, and that a sentence similar to that for Failure to Appear by a Material Witness, § 2J1.5, was more appropriate. However, *Underwood* is easily distinguished from this case because in *Underwood* the trial court found that the defendant had acted on a good faith belief that there was a legal basis for refusing to answer, whereas in this case the court found that the defendant acted in bad faith. This court has previously refused to follow *Underwood* in a contempt case in which the district court found that the defendant intended to obstruct justice. *United States v. Remini*, 967 F.2d 754, 760 (2d Cir. 1992). Given the finding that Cefalu intended to obstruct justice, it was not error for the court to find that the Failure to Appear by a Material Witness guideline was not sufficiently analogous to be useful in this case.

■ The government argues, on the other hand, that because the court found that Cefalu intended to obstruct justice, the most analogous guideline is § 2J1.2, which corresponds to Obstruction of Justice. Judge Korman provided several reasons for rejecting the Obstruction of Justice guideline. First, he explained that although he found an intent to obstruct justice, he did not believe that the Obstruction of Justice Guideline was sufficiently analogous because the examples provided in the Obstruction guideline deal with affirmative acts of wrongdoing, indicating that something more than the mere failure to answer a question may be required.[4] He thought it was telling that although the form of contempt at issue is one of the most common forms of contempt, none of the examples provided in the Obstruction of Justice guideline mention anything about simple fail-

ure to answer questions. In addition, Judge Korman noted that although the Obstruction guideline covers a wide range of behavior, it does not differentiate in terms of the punishment prescribed. The judge thought that this lack of flexibility was particularly problematic in this case because Cefalu would have received the same punishment under § 2J1.2 as if he had committed a far more serious form of obstruction. Finally, Judge Korman had doubts as to whether Cefalu's behavior amounted to substantial interference with the administration of justice. For each of these reasons Judge Korman did not think the Obstruction of Justice Guideline was sufficiently analogous.

The government argues that under *Remini*, Cefalu *must* be sentenced under the Obstruction of Justice Guideline because he committed criminal contempt with an intent to obstruct justice. At the outset, we find that *Remini* is distinguishable on its facts. The evidence of intent to substantially interfere with the administration of justice in order to help the defendants on trial was far greater in *Remini* than in the instant case. In *Remini*, the court relied on a taped phone conversation in which John Gotti, Remini's boss, told a third party that he had instructed his lawyers to "get Fat Georgie's [Remini's] cell ready. And nobody is taking the stand." *Remini*, 967 F.2d at 756 (brackets in original). The district court in *Remini* found that this conversation clearly demonstrated that Remini intended to help the defendants, who also worked for Gotti, and obstruct justice when he refused to testify. In this case, the court explained that the refusal to testify in the absence of any explanation, such as fear of reprisal, demonstrated bad faith and an intent to obstruct justice.[5]

---

4. The background to the Obstruction of Justice guideline explains:

> Numerous offenses of varying seriousness may constitute obstruction of justice: using threats or force to intimidate or influence a juror or federal officer; obstructing a civil or administrative proceeding; stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; using intimidation or force to influence testimony, alter evidence, evade legal process, or obstruct the communication

> of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding. The conduct that gives rise to the violation may, therefor, range from a mere threat to an act of extreme violence.

> USSG 2J1.1, comment. (backg'd).

5. There was some concern that Cefalu refused to testify out of fear of reprisal. The court thought it unlikely that the defendant would spend eighteen months in jail for civil contempt, followed by a criminal contempt charge and sentence for

Thus, in our view, the factual distinction between this case and *Remini* is sufficient that *Remini* does not control. In addition, Judge Korman, who was clearly familiar with *Remini*, determined that the application of USSG § 2X5.1 to the facts of this case did not call for the utilization of the Obstruction of Justice guideline, and we are directed to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

 Even absent the factual distinctions between *Remini* and this case, the government's argument fails. The government maintains that once the court found that Cefalu intended to obstruct justice, it was bound to sentence him under § 2J1.2. *Remini*, however, does not indicate that sentencing under the Obstruction of Justice guideline is required once there has been a finding of intent to obstruct justice. *Remini*, 967 F.2d at 760 ("Because the district court found that Remini intended to obstruct justice, the court's choice of the Obstruction of Justice guideline was not in error.") Rather, in *Remini* the court simply held that the trial court had not erred when it sentenced under the Obstruction of Justice guideline.[6]

 Although it has some appeal in that it is predictable, the government's argument ultimately must fail because many crimes, including Contempt and Misprision of Felo-

ny, are offenses which by their very nature obstruct justice. In recognition of this, USSG § 3C1.1, the guideline corresponding to the Adjustment for Obstruction of Justice, does not apply in cases involving Contempt, Obstruction of Justice, Perjury, Failure to Appear by a Material Witness, Failure to Appear by a Defendant, Payment to a Witness, Accessory After the Fact, and Misprision of Felony. *See* USSG § 3C1.1, comment. (n. 6).[7] Given this wide variety of obstruction offenses, each with their own guideline provisions, courts cannot be bound to sentence under the Obstruction of Justice Guideline any time they find an intent to obstruct justice. We reject the government's argument; a finding of intent to obstruct justice does not require sentencing under the Obstruction of Justice Guideline in every instance.

In short, we reject the arguments in favor of sentencing under the Obstruction of Justice guideline, and we find no error in Judge Korman's reasons for declining to sentence under that guideline. We now turn to the question of whether, in the absence of a sufficiently analogous guideline, the court imposed a plainly unreasonable sentence.

## C. *The Misprision of Felony Guideline*

Having properly determined that there was no sufficiently analogous guideline, Judge Korman, following USSG § 2X5.1,

---

criminal contempt, if he did not believe that testifying would put him in serious physical danger. (A 197, 230). Cefalu, however, never told the court that the reason he refused to testify was because he was afraid of reprisal.

**6.** In the usual case, a district court's selection of an applicable guideline presents a legal question that is reviewed *de novo*. *See United States v. Mucciante*, 21 F.3d 1228, 1237 (2d Cir.) (sentencing legal issues reviewed *de novo* ), *cert. denied*, — U.S. ——, 115 S.Ct. 361, 130 L.Ed.2d 315 (1994); *United States v. Hershkowitz*, 968 F.2d 1503, 1505 (2d Cir.1992) ("Because appellant does not contest the district court's findings of fact, but rather its interpretation of the Sentencing Guidelines, our review is *de novo*."); *see also United States v. Lambert*, 994 F.2d 1088, 1091 (4th Cir.1993) ("We review challenges to the district court's guideline selection de novo."). However, the determination under USSG § 2X5.1 as to whether there is a single "most analogous offense guideline," and, if not, how to proceed under 18 U.S.C. § 3553(b), involves the

application of a guideline to the facts of a case, and 18 U.S.C. § 3742(e) mandates that we give "due deference" to such applications by the district court, rather than review them *de novo*.

**7.** Application note 6 provides:

Where the defendant is convicted for an offense covered by § 2J1.1 (Contempt), § 2J1.2 (Obstruction of Justice), § 2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness), § 2J1.5 (Failure to Appear by a Material Witness), § 2J1.6 (Failure to Appear by a Defendant), § 2J1.9 (Payment to Witness), § 2X3.1 (Accessory After the Fact), § 2X4.1 (Misprision of Felony), this adjustment is not to be applied to the offense level for that offense except where a significant further obstruction occurred during the investigation, prosecution, or sentencing of the prosecution for the obstruction offense itself (*e.g.*, where the defendant threatened a witness during the course of the prosecution for the obstruction offense).

USSG § 3C1.1, comment. (n. 6)

proceeded under 18 U.S.C. § 3553(b). In keeping with the directions of § 3553(b), the court looked to the guidelines for direction and decided that Misprision of Felony was somewhat analogous to defendant's refusal to testify. Since he found that Misprision of Felony was similar, he considered the base offense level for USSG § 2X4.1, the Misprision of Felony guideline, in determining the sentence.[8] In addition, the court considered the factors discussed in § 3553(a)(2): the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, and to afford adequate deterrents to criminal conduct. The court imposed a sentence of thirty-three months.[9]

■ The parties both argue that the court incorrectly referred to the Misprision of Felony guideline in determining the appropriate sentence for Cefalu. Misprision of Felony has its roots in the common law which recognized a duty to raise a "hue and cry" and report a felony to the authorities. *Branzburg v. Hayes,* 408 U.S. 665, 696, 92 S.Ct. 2646, 2664, 33 L.Ed.2d 626 (1972). Misprision of Felony has been statutorily codified at 18 U.S.C. § 4:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

The elements of Misprision of Felony are 1) the principal committed and completed the alleged felony; 2) defendant had full knowledge of that fact; 3) defendant failed to notify the authorities; and 4) defendant took

steps to conceal the crime. *United States v. Ciambrone,* 750 F.2d 1416, 1417 (9th Cir. 1984); *United States v. Baez,* 732 F.2d 780, 782 (10th Cir.1984).

■ The district court determined that Misprision of Felony, though not a perfect fit, was similar because it addresses the defendant's withholding of information concerning a crime. The court found that there was clearly sufficient evidence to show the existence of a conspiracy. In addition, the court believed that Cefalu had knowledge of the underlying felony, but refused to relate that information to the court. The court based this determination on the fact that Cefalu remained silent in the face of a court order to testify despite having been immunized. In addition, the court knew that there had been testimony at trial that Cefalu was a member of Conte's crew. The third and fourth elements, failure to notify and attempt to conceal, are easily satisfied given defendant's persistent refusal to testify in violation of a valid court order.[10] None of the factual findings were clearly erroneous.

Judge Korman offered many reasons for sentencing Cefalu as he did. He thought Cefalu's crime was analogous to Misprision of Felony because both involve the withholding of information concerning a crime. He also indicated that he thought the guideline range for Misprision of Felony was a helpful reference. Judge Korman believed that a sentence of thirty-three months was needed to promote respect for the law, to provide for just punishment for the offense, and to deter criminal conduct. This is exactly what 18 U.S.C. § 3553(b) instructs judges to do. We see no error in the decision to refer to the Misprision of Felony guideline.

---

**8.** Section 2X4.1 sets the base offense level 9 levels lower than the offense level for the underlying offense, but in no event less than 4 or more than 19.

**9.** The court chose the base offense level of 19, which has a range of thirty-three to forty-one months for someone in criminal history category II.

**10.** Defendant misses the point when he argues that he cannot be sentenced under the Misprision

of Felony guideline because the government did not prove each element beyond a reasonable doubt. He was not charged with Misprision of Felony, nor was he sentenced for Misprision of Felony; the court merely considered the Misprision of Felony guideline as a reference in determining an appropriate sentence under 18 U.S.C. § 3553(b). In addition, each element was proven by a preponderance of the evidence, the relevant standard for purposes of sentencing. *United States v. Sasso,* 59 F.3d 341, 353 (2d Cir. 1995).

## CONCLUSION

While it is true that there may be strong arguments for referring to either the Obstruction of Justice guideline or the Failure to Appear by a Material Witness guideline, neither the government nor the defendant have demonstrated that it was plainly unreasonable for the court to refer to the Misprision of Felony guideline to determine an appropriate sentence for Cefalu. We have reviewed both parties' claims, cognizant that we must accept the findings of the district court unless they are clearly erroneous and that we must give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e)(4) (1994); *United States v. Kirsh,* 54 F.3d 1062, 1072 (2d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995). We see no error in the district court's calculation and imposition of a thirty-three month sentence. Accordingly, we affirm the judgement of the district court.