# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-4268

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　* Appeal from the United States
　　v.　　　　　　　　　　　　　　 * District Court for the
　　　　　　　　　　　　　　　　　* District of South Dakota.
David Osborne,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant - Appellant.　　 *

_____

Submitted: May 12, 1998
Filed:  January 8, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

David Osborne pled guilty to one count of vehicular battery in violation of 18 U.S.C. §§ 7, 13, and 1152, which, in conjunction, assimilate state criminal law for offenses by non-Indians on Indian lands.  See 18 U.S.C. §§ 7, 13, and 1152 (1994). Because the United States Sentencing Guidelines have no expressly promulgated guideline for vehicular battery, the district court[1] sentenced Osborne under the

_____

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

aggravated assault guideline. Osborne appeals his sentence, arguing that the court should have instead sentenced him under the guideline for involuntary manslaughter. We affirm.

David Osborne is a non-Indian who lived within the boundaries of the Pine Ridge Indian Reservation in South Dakota. On October 25, 1996, Osborne and some friends were drinking at a Pine Ridge residence when an acquaintance asked Osborne to drive to Gordon, Nebraska, and retrieve a load of cinder blocks. Osborne drove to Gordon in his fiancee's Chevy Blazer, along with three passengers: Marlita Red Cloud, Wanbli Red Cloud, and Liberty Joe Morgan. On the way to Gordon, the foursome stopped in White Clay, Nebraska, where they picked up a trailer and a twelve pack of beer. The foursome continued drinking during the trip. After loading the cinder blocks onto the trailer in Gordon, Osborne stopped at a liquor store and purchased another twelve pack of beer and an eight pack of small Windsor whiskey bottles.

On the trip back to Pine Ridge, Myron Shaw and Golden Buckman followed the Blazer in a separate vehicle. At one point, a few cinder blocks fell off the trailer onto the highway. When the two vehicles stopped to reload the blocks, Shaw tried to convince Osborne to let someone else drive because Osborne had been crossing both the center and fog lines of the road, but Osborne refused. Shaw pulled his vehicle in front of the Blazer and set his cruise control at sixty-five miles per hour. Shaw noticed the Blazer approaching at a high rate of speed. Before hitting Shaw's vehicle, however, the Blazer turned right and rolled several times. Osborne and all three passengers were thrown from the Blazer.

Morgan sustained the most serious injuries, including a head injury and a broken hip, and remained comatose for several months. Marlita Red Cloud suffered a fractured pelvis, a fractured rib, and extensive bruising. Wanbli Red Cloud suffered injuries as well, but they were not addressed in the investigative reports. Osborne

suffered injuries and was taken to a nearby hospital where blood tests revealed a blood alcohol level of 0.27 and the presence of marijuana in his system.

Osborne pled guilty to a violation of 18 U.S.C. §§ 7, 13, and 1152, predicated upon a violation of South Dakota Codified Laws § 22-16-42.[2] Under 18 U.S.C. § 13, Osborne's state law crime becomes a federal offense for which he is sentenced under the federal guidelines. See United States Sentencing Commission, Guidelines Manual, § 2X5.1 (Nov. 1997).

Because there is no expressly promulgated guideline for the offense of vehicular battery, the district court, in accordance with USSG § 2X5.1, looked for the most analogous specific offense guideline. The court determined that the involuntary manslaughter guideline and the aggravated assault guideline were almost equally analogous, except that death did not occur in this case. The court chose the aggravated assault guideline as the most analogous guideline. The court assigned Osborne a base offense level of fifteen, increased by six levels for permanent or life-threatening injury to a victim, and decreased by two levels for acceptance of responsibility for a total offense level of nineteen. Combining the offense level with a Category II criminal history, the district court determined Osborne's guideline range to be thirty-three to forty-one months and sentenced Osborne to thirty-six months imprisonment, three years probation, and $10,570 restitution.

---

[2]South Dakota Codified Laws § 22-16-42 (Lexis 1998) states, in pertinent part:

> Any person who, while under the influence of an alcoholic beverage, any controlled drug or substance, or a combination thereof, without design to effect serious bodily injury, operates or drives a motor vehicle of any kind in a negligent manner and thereby causes the serious bodily injury of another person . . . is guilty of vehicular battery.

Osborne first argues that the crime of aggravated assault is not sufficiently analogous to the crime of vehicular battery because vehicular battery requires a less culpable state of mind than aggravated assault. Secondly, Osborne argues that involuntary manslaughter, not aggravated assault, is the most analogous guideline to his crime. Finally, Osborne contends that the district court's application of the aggravated assault guideline was inconsistent with the court's remarks during the sentencing hearing and with the court's use of the involuntary manslaughter guideline in similar cases.

## I.

Guideline 2X5.1 refers to the situation where there is no expressly promulgated guideline, and mandates that the most analogous offense guideline be applied. If there is not a sufficiently analogous guideline, then 18 U.S.C. §3553(b) shall control. See USSG § 2X5.1.

Because the district court concluded that aggravated assault was the most analogous guideline to vehicular battery in this case, but concluded that involuntary manslaughter was the most analogous guideline to vehicular battery in the companion case we decide today, United States v. Allard, No. 97-4006, we feel it necessary to carefully analyze and articulate the procedures required by USSG § 2X5.1 and our standard of review.

This is particularly essential because, in addition to the two cases before us today, other cases that deal with vehicular battery as an assimilated crime have come before several of the district courts in our circuit.

Congress provided the standards of review for guideline appeals in 18 U.S.C. § 3742(e) (1994).[3]  However, the precise application of the statutorily mandated standard of review to USSG § 2X5.1 is a question of first impression in this circuit and a disputed issue among other federal circuits.

The background note to USSG § 2X5.1 states specifically, "The court is required to determine if there is a sufficiently analogous offense guideline and, if so, to apply the guideline that is most analogous.  Where there is no sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) control."  USSG 2X5.1, comment. (backg'd).  This portion of the application note mandates a two-step analysis, and makes abundantly clear that there is a difference between a situation where the district judge is choosing the most analogous guideline among sufficiently analogous guidelines, and a situation where there is no sufficiently analogous guideline.  In construing the guideline and the application note, we must give meaning to each of these terms.

The first step of the USSG § 2X5.1 analysis is to determine whether there are any guidelines which are sufficiently analogous to the defendant's crime; if there are no sufficiently analogous guidelines, then the defendant is to be sentenced using the general provisions of 18 U.S.C. § 3553(b) (1994).[4]  See United States v. Cefalu, 85

---

[3]18 U.S.C. § 3742(e) states:

> Upon review of the record, the court of appeals shall determine whether the sentence . . . (2) was imposed as a result of an incorrect application of the sentencing guidelines . . . [the court of appeals] shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

[4]18 U.S.C. § 3553(b) directs that when there is no applicable guideline, the court is to have due regard for general sentencing policies (such as promoting respect for the law, providing adequate deterrence, and protecting the public from further crime),

F.3d 964, 966-69 (2d Cir. 1996).   Scant precedent exists regarding the appropriate standard of review on the district court's determination of whether a guideline is sufficiently analogous to the defendant's crime.   We hold that the district court's determination as to whether there is a sufficiently analogous guideline to the defendant's crime is reviewed de novo.  See United States v. Gabay, 923 F.2d 1536, 1545 (11th Cir. 1991).  First, the issue most generally will involve comparing the elements of federal offenses to the elements of the crime of conviction.  Secondly, a determination that there is not a sufficiently analogous guideline will require the district court to impose sentence under 18 U.S.C. § 3553(b), which we are convinced is a legal issue.

The second step of the USSG § 2X5.1 analysis requires the district court to choose the most analogous guideline from the sufficiently analogous offense guidelines, if indeed there are more than one.   Conflicting precedent exists regarding the appropriate standard of review of the district court's choice of the most analogous guideline.  The circuits differ on whether the choice of the most analogous guideline is a question of law to be reviewed de novo[5] or is a question of applying the guidelines to the facts to be reviewed with due deference.[6]  We are persuaded  that the district

---

guidelines applicable to similar offenses and offenders, and the applicable policy statements of the Sentencing Commission.   See 18 U.S.C. § 3553(b) (1994) (incorporating 18 U.S.C. § 3553(a)(2) by reference).

[5]See United States v. Couch, 65 F.3d 542, 544 (6th Cir. 1995); United States v. Smertneck, 954 F.2d 264, 265 (5th Cir.), cert. denied, 506 U.S. 833 (1992); United States v. Norman, 951 F.2d 1182, 1184 (10th Cir. 1991); cf. United States v. Prevatte, 16 F.3d 767, 779-80 (7th Cir. 1994) (choosing most analogous guideline pursuant to USSG § 2K1.4); United States v. Mendoza-Fernandez, 4 F.3d 815, 817 (9th Cir. 1993) (choosing more "apt" guideline pursuant to USSG § 2F1.1).

[6]See Cefalu, 85 F.3d at 968 n.6; United States v. Mariano, 983 F.2d 1150, 1158 (1st Cir. 1993).

court's choice of the most analogous guideline is to be reviewed with due deference for several reasons.

First, in choosing the most analogous guideline, the district court must take into account all the circumstances of the case and make factual findings to support its choice. Our own circuit has recognized this concept. See United States v. Clown, 925 F.2d 270, 271-72 (8th Cir. 1991); see also, United States v. Fisher, 137 F.3d 1158, 1167 (9th Cir. 1998). After the facts are found, the district court must decide which guideline is most analogous based upon those facts. We are persuaded that this evaluation in choosing the most analogous guideline is more factual in nature than legal.[7] Absent an indication that the district court misunderstood the legal standards, that is, it misunderstood the elements of the state offense or the analogous federal offenses, we will defer to its judgment as to how the facts fit into those elements. See Mariano, 983 F.2d at 1158.

Further, we believe this is what Congress intended. Choosing the most analogous guideline involves more than just interpreting the guidelines, in the sense of declaring the meaning of guideline terms. Instead, it involves evaluating which of two or more legal standards is most akin to the facts. Surely this process is an "application of the guidelines to the facts." Congress has explicitly mandated that we give due deference to the district court's application of the guidelines to the facts, see 18 U.S.C. § 3742(e), and holding otherwise is ignoring Congress' command. See Cefalu, 85 F.3d at 967 n.6; cf. Koon v. United States, 518 U.S. 81, 97 (1996) (stating that Congress did not intend to vest in appellate courts wide-ranging authority over district court

---

[7] Mariano recognizes the far broader and essentially legal question of whether a particular offense guideline will always be most analogous to the crime of conviction and indicates that this question need not be answered. 983 F.2d at 1158. We agree.

sentencing decisions and that deference due depends on the nature of the question presented).

The final reason we give due deference to the choice of the most analogous guideline is linked to our decision to apply de novo review on the question of whether a guideline is sufficiently analogous. The divergent standards of review strike the appropriate balance with respect to the Commission's objective of avoiding "unwarranted sentence disparities" between similarly situated defendants, while at the same time "maintaining sufficient flexibility to permit individualized sentences when warranted." 28 U.S.C. § 991(b)(1)(B) (1994). With appellate courts reviewing the sufficiency question de novo, defendants will not receive sentences based on wholly inapplicable guidelines. However, USSG § 2X5.1 cases are inherently out of the ordinary; the Commission does not offer a predetermined guideline or offense level. By giving due deference to the district court's choice of the most analogous guideline, district courts will have more freedom to fashion the appropriate sentence in these unconventional situations on a case by case basis.

## II.

Having determined the appropriate standard of review, we turn to the merits of Osborne's claims. Osborne bases his argument that the aggravated assault guideline is neither sufficiently analogous to, nor the most analogous guideline to vehicular battery on an apparent difference between the state of mind required for aggravated assault under federal law and the state of mind required for vehicular battery under South Dakota law. There are a number of federal offenses which are treated as aggravated assault under the Sentencing Guidelines. See USSG § 2A2.2 comment. (listing 18 U.S.C. §§ 111, 112, 113(a)(2), (3), (6), 114, 115(a), (b)(1), 351(e), 1751(e) as statutory provisions to which the aggravated assault guideline applies). The Sentencing Guidelines define aggravated assault to include a felonious assault involving "(b) serious bodily injury." USSG § 2A2.2 comment. (n.1). The most relevant form of

-8-

aggravated assault to our discussion is assault resulting in a serious bodily injury, for which the statute provides a ten year maximum sentence.  See 18 U.S.C. § 113(a)(6) (1994).

Because of assault's extensive common law roots, this court has had little occasion to address the elements of assault or of assault resulting in a serious bodily injury under federal law.  Nevertheless, we have repeatedly stated that assault resulting in a serious bodily injury requires only a general intent to commit the acts of assault, and not a specific intent to do bodily harm.  See United States v. Felix, 996 F.2d 203, 207 (8th Cir. 1993); United States v. Big Crow, 728 F.2d 974, 975 n.1 (8th Cir. 1984); United States v. Knife, 592 F.2d 472, 482 (8th Cir. 1979).  Further, in affirming a sentence for assault on an IRS agent, we held in United States v. Wollenzien, 972 F.2d 890 (8th Cir. 1992), that enhancing the defendant's sentence based upon physical contact was not double counting with assault charged under 18 U.S.C. § 111.  We reasoned that assault prohibited under 18 U.S.C. § 111 may be violated by minimal physical contact or even without the presence of any physical contact.  Id. at 891-92.  Wollenzien at least points to an acceptance of common law principles such that attempts to commit battery and the act of putting another person in reasonable apprehension of bodily harm both fall within the meaning of assault.  See United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982), cert. denied, 460 U.S. 1016 (1983);  United States v. Dupree, 544 F.2d 1050, 1051 (9th Cir. 1976).

Osborne nevertheless attempts to contrast the intent requirement for aggravated assault with the mental state requirement for vehicular battery by arguing that vehicular battery under South Dakota law requires only criminal negligence.  Osborne gives the South Dakota statute too narrow a reading.

South Dakota's vehicular battery statute is worded almost identically to its vehicular homicide statute, with the exception that the vehicular homicide section refers to death rather than serious bodily injury.  See S.D. Codified Laws § 22-16-41 (Lexis

1998). Both statutes prohibit driving while under the influence of drugs or alcohol and negligently causing either death or serious bodily injury. The Supreme Court of South Dakota held in State v. Big Head, 363 N.W.2d 556 (S.D. 1985), that the vehicular homicide statute was a general intent statute and, quoting earlier authority, stated, "[I]n a general intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to accomplish such result." Id. at 561 (citations omitted). Thus, in both South Dakota statutes the prohibited results, whether death or serious bodily injury, need only be reasonably expected to follow from the offender's voluntary act, regardless of any subjective desire to cause injury or death. The voluntary act is driving under the influence.

We are unpersuaded by Osborne's argument contrasting the intent requirements of aggravated assault and vehicular battery. Further, we observe that both vehicular battery and the aggravated assault under 18 U.S.C. § 113(a)(6) contemplate serious bodily injury. See S.D. Codified Laws § 22-16-42; 18 U.S.C. §113(a)(6). We agree with the district court that the aggravated assault guideline is sufficiently analogous to vehicular battery.

We now turn to Osborne's argument that the aggravated assault guideline is not the most analogous guideline to vehicular battery. In determining the most analogous guideline under USSG § 2X5.1, a district court is to look not merely to the definition of the offenses, but also to the actual conduct of the individual defendant. See Fisher, 137 F.3d at 1167; Clown, 925 F.2d at 272. We thus turn to the circumstances surrounding Osborne's offense. First, the amount of alcohol involved in this case was considerable, reflected not only in the quantities of alcoholic beverages purchased during the trip but also in Osborne's high blood alcohol level. Osborne's blood test results suggest that he was also under the influence of marijuana. Even after being warned that he was weaving out of his lane and that he should let someone else drive, Osborne continued to drive in his highly intoxicated state. Finally, despite pulling a

trailer filled with loose cinder blocks, Osborne drove the Blazer well in excess of sixty-five miles per hour, almost colliding with the back of Shaw's vehicle.

We conclude that Osborne's conduct fits well within the aggravated assault guideline's purview, and we find support for this conclusion in United States v. Loera, 923 F.2d 725 (9th Cir.), cert. denied, 502 U.S. 854 (1991). In Loera, the Ninth Circuit concluded that there was sufficient evidence to convict the defendant of assault resulting in a serious bodily injury where the defendant swerved across the center line of the road, collided with an oncoming car, and two hours later tested at a blood alcohol level of 0.26. Rejecting Loera's argument that the government did not establish that his conduct was "willful," the Ninth Circuit stated, "The law will presume that a person intended the natural and probable consequences of his voluntary acts. The willful conduct in this case was the operation of a motor vehicle while in a state of voluntary intoxication." Id. at 728 (internal citations and quotations omitted). Osborne's conduct was similar to the conduct of the defendant in Loera. Osborne chose to drive a motor vehicle in a highly intoxicated state. His inability to safely operate the vehicle and the consequential accident and injuries followed naturally from his decision. Thus, Osborne had the general intent comparable to that required for assault resulting in a serious bodily injury under federal law, and he caused such bodily injury.

As for Osborne's argument that involuntary manslaughter is more analogous to vehicular battery, we first observe that death did not result in this case. More importantly, we give due deference to the district court's choice of the most analogous guideline and cannot say the aggravated assault guideline was inappropriately applied in this case.

Osborne final contention is that the district court's application of the aggravated assault guideline to his vehicular battery was inconsistent with the district court's remarks concerning the use of the involuntary manslaughter guideline and with the

district court's use of the involuntary manslaughter guideline in other vehicular battery cases. These contentions are without merit. The district court's remarks were made in response to Osborne's argument that the court should apply the base offense level for involuntary manslaughter involving criminal negligence rather than recklessness. The court's remarks thus had little relevance to its decision whether the aggravated assault guideline or the involuntary manslaughter guideline was most analogous to Osborne's offense. Further, the district court's application of the involuntary manslaughter guideline in other vehicular battery cases is explained by the fact that courts look to the relevant conduct of the defendant and not merely to the definition of the crimes. It may be that fitting Osborne's offense into the guidelines is similar to fitting a square peg into one of two round holes, but we conclude that the district court did not err and affirm the sentence imposed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT