# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2844
_____

United States of America

*Plaintiff - Appellee*

v.

Taleb Jawher

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 22, 2023
Filed: November 1, 2023
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

MELLOY, Circuit Judge.

While Taleb Jawher was working at a convenience store in St. Louis, a suspected shoplifter appeared to steal a $1.10 piece of candy. Jawher pointed a loaded pistol at the man and chased him from the store. During an ensuing altercation, Jawher repeatedly beat him on the head with the pistol. The pistol ultimately discharged and killed the man.

Jawher initially pleaded guilty to possessing a firearm while being unlawfully present in the United States in violation of 18 U.S.C. § 922(g)(5). Because the offense resulted in a death, the district court applied a homicide guideline cross reference pursuant to U.S.S.G. § 2K2.1(c)(1)(B). Jawher appealed, arguing the district court erred by applying the guideline for second-degree murder rather than manslaughter. While Jawher's appeal was pending, the Supreme Court issued its opinion in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019), holding the knowledge requirement of § 922(g) applied to the "prohibited status" element, *i.e.*, the government must prove the defendant knew he was present in the United States illegally. On plain error review, our court remanded based on *Rehaif* and did not address the sentencing matter. *See United States v. Jawher*, 950 F.3d 576, 581 (8th Cir. 2020).

On remand, Jawher waived his right to a jury trial. Following a bench trial focused on the issues of Jawher's immigration status and his knowledge of that status, the district court[1] found Jawher guilty. The district court again applied the second-degree murder guideline as the cross reference. Jawher now appeals his conviction arguing the district court failed to adequately address the issue of subjective knowledge. He also appeals his sentence arguing the district court erred by applying the guideline for second-degree murder rather than manslaughter. We affirm.

I.

As to the conviction, Jawher does not directly contest the sufficiency of the evidence. Rather, he contests the sufficiency of the district court's pronouncement and asks that we remand to a different judge for additional findings. In particular, he argues the district court failed to address the issue of subjective knowledge. Regardless of the precise scope of Jawher's arguments in this appeal, we conclude

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

the record is more than sufficient to support the guilty verdict. We also conclude the district court's pronouncement satisfied the requirements of Federal Rule of Criminal Procedure 23(c).

Rule 23(c) provides that, "In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion." Here, at the end of the bench trial, the district court took the case under advisement. Later, in open court, the district court pronounced a general verdict of guilty after specifically discussing the Eighth Circuit's remand order and identifying status and knowledge as the contested issues. The district court did not provide additional elaboration or more specific findings because neither Jawher nor the government requested specific findings. In the absence of a request for more detailed findings, the district court fulfilled its duty as the fact finder at the bench trial by pronouncing the general verdict. *See, e.g.*, *United States v. Gant*, 691 F.2d 1159, 1163 (5th Cir. 1982) (where a defendant waives the right to specific findings of fact by not requesting them pursuant to Rule 23, the reviewing court implies findings to support the verdict where the evidence, viewed in the light most favorable to the verdict, permits); *McClain v. United States*, 417 F.2d 489, 492 (9th Cir. 1969) (same).

To the extent Jawher argues the district court misconstrued the nature of the subjective knowledge inquiry or otherwise failed to appreciate Jawher's arguments, we disagree. In general, we presume district court judges know and apply the law. *See, e.g.*, *United States v. Trung Dang*, 907 F.3d 561, 565 (8th Cir. 2018) (noting that we "presum[e] 'that district judges know the law,' especially when it comes to clear rules in the area of criminal sentencing" (citation omitted)). Just as this presumption is appropriate in the important and oft-repeated area of criminal sentencing, it is appropriate in the face of a remand that clearly identifies a singular issue of concern. Regardless, we need not rely on the presumption in this case. The bench-trial record leaves no doubt that the experienced district court judge was aware of the critical issue before the court on remand.

The trial record included Jawher's extensive immigration proceedings, testimony from an immigration officer, and testimony from Jawher's immigration attorney. Jawher had entered the country on a temporary visa and overstayed his visa. He paid substantial sums to obtain fraudulent documents as to a foreign divorce and submitted those documents to immigration authorities. He also submitted multiple applications for a marriage-based change in status relying on his marriage to a United States citizen. One such application was pending at the time he possessed the firearm and killed the suspected shoplifter. Jawher received numerous communications from immigration authorities over the span of several years indicating he had been denied relief or had not received a change in status.

During the pendency of his various applications, however, immigration authorities did not physically remove him from the United States. Immigration authorities also granted him temporary permission to work, albeit permission referenced in a document that expressly disavowed the granting of any legal immigration status. Jawher argued below that the immigration authorities' acts of grace in granting permission to work and not physically removing him during the pendency of his applications reasonably caused him to believe he was legally present in the United States. According to Jawher, the fact that English is not his native tongue further supports this conclusion, as does the fact that his immigration attorney told him he could remain in the United States.

In short, the issues of status and knowledge were squarely before the district court with evidence and arguments to support both sides of the case. The district court's general verdict of guilty without further discussion does not demonstrate a failure to understand or resolve these key issues. And, regardless of Jawher's argument that the present record might have permitted a fact finder to conclude he subjectively and mistakenly believed he was legally present, we review the record with deference to the verdict. *See United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011) ("We review the sufficiency of the evidence . . . in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence rationally

supports two conflicting hypotheses." (citation omitted)). Viewed in this light, the record adequately supports the guilty verdict and its implicit finding of subjective knowledge. Immigration authorities repeatedly informed Jawher that he lacked legal status. Moreover, the fact that he purposefully committed fraud in an effort to obtain legal status indicates an understanding that he lacked legal status. The district court permissibly concluded Jawher knew he was present illegally.

II.

As to the sentencing issue, Jawher presents two arguments: one technical and one factual. The guideline for a § 922(g) conviction calls for application of "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide)" when the illegal firearm possession results in a death. U.S.S.G. § 2K2.1(c)(1)(B). In his technical argument, Jawher argues the court must apply a by-the-elements approach as normally applied for crime-of-violence or violent-felony determinations under recidivist guidelines and statutes. *See, e.g.*, *Mathis v. United States*, 579 U.S. 500 (2016). In particular, he argues a federal homicide guideline should not apply because a jurisdictional element is lacking in that the shooting did not occur on federal land. In his factual argument, Jawher argues simply that, under either federal or Missouri law, the most analogous guideline should be manslaughter rather than second-degree murder because the evidence at sentencing did not show malice as required for second-degree murder.

The technical argument fails. The guideline cross reference looks merely to "the most analogous" homicide offense guideline. U.S.S.G. § 2K2.1(c)(1)(B). It directs the sentencing court to apply "analogous" guidelines not specific statutory provisions. There simply is no basis to conclude the cross reference requires attention to jurisdictional matters as would be the case for an actual federal homicide charge. *See United States v. Szczerba*, 897 F.3d 929, 942 (8th Cir. 2018) (rejecting a jurisdictional argument as applied to a guideline cross reference). Accordingly, we review the district court's determination as to the "most analogous" homicide guideline deferentially, as a factual determination. *See United States v. Tunley*, 664

-5-

F.3d 1260, 1262–64 (8th Cir. 2012) (reviewing for clear error a district court's factual analysis pursuant to the cross reference of U.S.S.G. § 2K2.1(c)(1)(B)); *see also United States v. Osborne*, 164 F.3d 434, 438 (8th Cir. 1999) (applying deferential review to factual findings regarding analogous guidelines).

The factual argument also fails. Some of the altercation was captured on video, but the video does not show Jawher pulling the trigger. Jawher argues that because he did not intentionally pull the trigger—did not actually intend to shoot the victim in the head—the record only supports a finding of recklessness, rather than malice, such that the cross reference for manslaughter, rather than second-degree murder, must apply. We reject this argument as an overly narrow interpretation of both the facts and the definition of malice.

Here, Jawher chased a customer from the convenience store while brandishing a loaded gun in response to the supposed theft of a $1.10 piece of candy. Jawher not only escalated the situation to extreme violence and caused the shooting, he admits that he beat the customer repeatedly on the head with the pistol. Beating a person on the head with a substantial piece of hardware is a potentially fatal act in and of itself, without regard to the shooting.

Under either Missouri or federal law, the use of potentially deadly violence against another may demonstrate the malice necessary to support a second-degree murder conviction. Accordingly, whether Jawher purposefully shot the victim in the head, or accidentally shot the victim in the head while potentially fatally beating his head with a pistol, the district court permissibly concluded the *mens rea* rose above the baseline recklessness required for manslaughter and reached the level of malice required for murder. *See, e.g.*, *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978) (hitting and kicking sufficed to show malice because "[m]alice does not require proof of a subjective intent to kill. Malice may be established by evidence of conduct which is 'reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'" (citation omitted)); *see*

*also State v. Lowe*, 318 S.W.3d 812, 818 (Mo. App. 2010) (affirming the use of murder and voluntary manslaughter instructions, and the rejection of an involuntary manslaughter instruction, where the defendant hit the victim in the head with a hammer). The district court did not clearly err by applying the guideline for second-degree murder.

Jawher also challenges the procedural and substantive reasonableness of his overall sentence, but his arguments in this regard are without merit. We affirm the judgment of the district court.

_____