# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4006

_____

United States of America,          *
                                   *
            Plaintiff - Appellee   *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of South Dakota.
Dean Arthur Allard,                *
                                   *
            Defendant - Appellant. *

_____

Submitted:  May 12, 1998
Filed:  January 8, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Dean Arthur Allard pled guilty to one count of vehicular battery in violation of 18 U.S.C. §§ 7, 13 and 1152 (1994).  Those sections assimilate state criminal law for offenses by non-Indians on Indian land, and thus include South Dakota's vehicular battery statute.  See 18 U.S.C. §§ 7, 13, and 1152; S.D. Codified Laws § 22-16-42 (Lexis 1998).  Because the United States Sentencing Guidelines have no expressly promulgated guideline for vehicular battery, the district court applied the most analogous guideline, which the court held to be involuntary manslaughter.  Allard now

appeals the thirty-three month sentence imposed upon him, arguing that the district court erred in multiple respects. We affirm in part and reverse in part.

Allard, a non-Indian, spent a part of April 9, 1996, drinking with friends in Norris and Wanblee, South Dakota. He drove onto Highway 44, crossed the median and had a head-on collision with the car driven by Stephanie Fire Thunder, an enrolled member of the Oglala Sioux Tribe. She was trapped in the vehicle for approximately two hours before rescue, and eventually medical personnel took her to Rapid City Regional Hospital. She suffered multiple lacerations, a broken rib, and a dislocated left hip. Her hip required surgery. She was hospitalized until April 17, 1996, and was then transferred to the Rapid City Rehabilitation Hospital, where she received therapy for a continuing loss of feeling in her leg.

Officers found the highly intoxicated Allard in his pick-up truck and removed a partially full whiskey bottle from the truck. Allard was taken to Bennett County Hospital, where his blood alcohol content was determined to be 0.189.

Allard pled guilty to a violation of 18 U.S.C. §§ 7, 13, and 1152, predicated upon a violation of South Dakota Codified Laws § 22-16-42.[1] When there is no expressly promulgated guideline for an offense, the district court is to choose the most analogous guideline. See United States Sentencing Commission, Guidelines Manual § 2X5.1 (Nov. 1997). Although the district judge thought the involuntary manslaughter guideline and the aggravated assault guideline were both analogous, it chose the

---

[1]South Dakota Codified Laws Section 22-16-42 states:

> Any person who, while under the influence of an alcoholic beverage, any controlled drug or substance, or a combination thereof, without design to effect serious bodily injury, operates or drives a motor vehicle of any kind in a negligent manner and thereby causes the serious bodily injury of another person . . . is guilty of vehicular battery.

involuntary manslaughter guideline as the most analogous. That guideline calls for a base offense level of fourteen when the defendant's conduct is reckless. See USSG § 2A1.4. After setting the offense level at fourteen, the court made two adjustments. It increased the level by five based upon the aggravated assault guideline's specific offense characteristics for the seriousness of the victim's injuries, and it reduced the level by three because Allard had accepted responsibility for his actions. See USSG §§ 2A2.2 and § 3E1.1. The adjustments left the total offense level at sixteen. Although Allard had six previous driving-under-the-influence convictions, only two affected the criminal history, resulting in a criminal history category of III. This resulted in a presumptive sentence range of twenty-seven to thirty-three months. Allard's ultimate sentence was thirty-three months.

In making the adjustments referred to above, the court explicitly stated that the specific offense characteristics of aggravated assault could be "added" to the involuntary manslaughter guideline's base offense level. The district judge stated that he felt entitled to make an upward departure, but the transcript does not reflect that he did so. Throughout the hearing, the district judge stated the two reasons he was making the addition. First, in the district judge's words, the aggravated assault guideline and involuntary manslaughter guideline were similar and choosing between the two was really an "academic" matter involving "semantics." Secondly, Allard had several previous criminal convictions that were not accounted for in his criminal history.

On appeal, Allard argues that the involuntary manslaughter guideline is not sufficiently analogous to the assimilative crime of vehicular battery. Allard concedes that involuntary manslaughter and vehicular battery are similar in that both offenses lack the element of specific intent, but maintains the offenses are not analogous because vehicular battery involves the infliction of a non-fatal injury, while involuntary manslaughter involves the infliction of a fatal injury. Allard further argues that because there is no applicable guideline, he should be sentenced pursuant to 18 U.S.C. § 3553(b). 18 U.S.C. § 3553(b) directs that when there is no applicable guideline, the

court is to have due regard for general sentencing policies (such as promoting respect for the law, providing adequate deterrence, and protecting the public from further crime), guidelines applicable to similar offenses and offenders, and the applicable policy statements of the Sentencing Commission. See 18 U.S.C. § 3553(b) (1994) (incorporating § 3553(a)(2) by reference). Allard maintains that the court should have considered the minor assault guideline and the involuntary manslaughter guideline and sentenced him using an offense level between the offense levels provided by those guidelines. See USSG §§ 2A1.4 and 2A2.3. Finally, Allard argues that even if the involuntary manslaughter guideline is the applicable guideline in his case, the district court erred by adding the specific offense characteristics of the aggravated assault guideline to the involuntary manslaughter guideline. Allard claims that this amounted to "double counting" because the involuntary manslaughter guideline assumes the victim's death.

We have decided today the companion case of United States v. Osborne, No. 97-4268, in which the same district judge applied the aggravated assault guideline as the most analogous guideline in imposing a sentence for vehicular battery. Despite the factual similarity of the cases and the district court's choice of the involuntary manslaughter guideline as the most analogous guideline in this case, we conclude the district court's choice was not erroneous in either case.

The United States invites this court to review Allard's sentence for plain unreasonableness. 18 U.S.C. § 3742(e) states, "[T]he court of appeals shall determine whether the sentence . . . was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(e) (1994). There is no applicable sentencing guideline only when the district judge has properly determined that there is no sufficiently analogous guideline and sentenced the defendant pursuant to the general provisions of 18 U.S.C. § 3553(b). See United States v. Cefalu, 85 F.3d 964, 966-69 (2d Cir. 1996). See also USSG § 2X5.1. The district judge held that the involuntary manslaughter guideline was most analogous to vehicular battery;

thus, reviewing Allard's sentence for plain unreasonableness is not appropriate. Instead, as Osborne indicates, we must review the district judge's determination that the involuntary manslaughter guideline was sufficiently analogous to vehicular battery, a review we perform de novo, and the district judge's determination that the involuntary manslaughter guideline was most analogous to vehicular battery, a review we perform with due deference.

As we indicated in Osborne, determining whether there is a sufficiently analogous guideline to a particular crime is generally a task of comparing the elements of federal offenses to the elements of the crime of conviction. In this case, we agree with the district court that involuntary manslaughter is sufficiently analogous to vehicular battery. Like vehicular battery, involuntary manslaughter contemplates that the defendant did not have the specific intent to cause harm. See 18 U.S.C. § 1112 (1994) (defining manslaughter as the unlawful killing of another human being without malice); State v. Big Head, 363 N.W.2d 556, 561 (S.D. 1985) (interpreting South Dakota's similar vehicular homicide statute as not requiring subjective desire to cause harm). Like vehicular battery, involuntary manslaughter requires that the defendant's conduct cause serious bodily harm, although involuntary manslaughter specifically contemplates the death of the victim. See 18 U.S.C. § 1112; S.D. Codified Laws § 22-16-42. Indeed, Allard's only argument that involuntary manslaughter is not sufficiently analogous to vehicular battery is that involuntary manslaughter requires the death of the victim, whereas vehicular battery only requires serious bodily injury. What Allard misses is that, by definition, analogous guidelines do not and need not perfectly match the defendant's crime. See United States v. Terry, 86 F.3d 353, 358 (4th Cir. 1996). We cannot say as a matter of law that the difference between death and serious bodily injury makes involuntary manslaughter insufficiently analogous to vehicular battery. Instead, we think the line drawing that is necessary in determining when a victim's injury is serious enough to fall within the purview of the involuntary manslaughter guideline is better left to the district court when it, after considering all the circumstances of the case, chooses the most analogous guideline.

Allard does not specifically challenge the district court's choice of the most analogous guideline and offers no one guideline that should have been applied. Even if he did, we give the district court due deference in choosing the most analogous guideline. We cannot say the district court erred in choosing the involuntary manslaughter guideline considering Allard's reckless conduct and the seriousness of the victim's injury.

Having disposed of Allard's first argument, we are left with his claim that even if the district court correctly chose the involuntary manslaughter guideline, it "double counted" by adding the specific offense characteristics of aggravated assault to the base offense level of involuntary manslaughter. While we do not believe this was "double counting," Allard's objection raises the propriety of the procedures used in sentencing him.

The sentencing guidelines generally contemplate that the district court apply one guideline when the defendant is convicted on one count.[2] The guidelines' application instructions specifically direct the court to determine the applicable offense guideline, to apply the base offense level, and to "apply any appropriate specific offense characteristics . . . contained in the particular guideline . . . ." USSG § 1B1.1(b) (emphasis added). Likewise, USSG § 1B1.2 directs the court, "once it has determined the applicable guideline . . . to determine any applicable specific offense characteristics under that guideline" USSG § 1B1.2 comment. (n.2) (emphasis added and parentheses omitted). The guidelines call for upward departures, not the combining of guidelines, when the district court finds that the total offense level arrived at by applying the appropriate guideline is not adequate. See USSG §§ 1B1.1(I) and 5K2.0. Finally,

---

[2]Some guidelines cross reference other guidelines. See USSG § 1B1.5. Furthermore, multiple guidelines are considered when grouping multiple counts. See USSG § 3D1.1. However, this is not a case involving a guideline with a cross reference or a conviction on multiple substantive counts. See USSG §§ 2A1.4 and 2A2.2.

combining guidelines contradicts USSG § 2X5.1's instruction to apply the most analogous guideline (assuming it is sufficiently analogous) in the case of an assimilated crime.[3] Thus, we conclude the district court erred in directly adding the specific offense characteristics of aggravated assault to the base offense level for involuntary manslaughter.

The specific offense characteristics of aggravated assault cannot be directly added to the base offense level for involuntary manslaughter. Instead, if the district judge concluded an increase in Allard's sentence was necessary, he had available the option of an appropriate upward departure. The basis for the departure must be fully articulated and supported by particularized findings addressing circumstances the Commission did not adequately consider in the guidelines. See United States v. Cammisano, 917 F.2d 1057, 1063-64 (8th Cir. 1990). It is critical for guideline procedures to be strictly followed if the guidelines are to succeed in achieving "unwarranted sentence disparities" between similarly situated defendants. 28 U.S.C.

_____

[3]Some courts have reasoned that a USSG § 2X5.1 case is necessarily a case where there is no applicable guideline. See, e.g., United States v. Cherry, 10 F.3d 1003, 1012-13 (3d Cir. 1993). They have held that multiple guidelines can be used in sentencing the defendant because 18 U.S.C. § 3553(b) directs that when there is no applicable guideline, the court is to have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses. See id. (quotations omitted). However, as we indicated above, if a sufficiently analogous guideline is chosen as the most analogous guideline to the defendant's crime, it is the applicable guideline. To hold otherwise is to hold that 18 U.S.C. § 3553(b) is applicable both when there is not a sufficiently analogous guideline and when there is a sufficiently analogous guideline. Such an approach cannot be squared with the Commission's instruction in USSG § 2X5.1. We agree with most of the circuits' approach to this issue. Cf. e.g., United States v. Couch, 65 F.3d 542, 544-45 (6th Cir. 1995); United States v. Mariano, 983 F.2d 1150, 1158-59 (1st Cir. 1993); United States v. Smertneck, 954 F.2d 264, 265 (5th Cir.), cert. denied, 506 U.S. 833 (1992); United States v. Norman, 951 F.2d 1182, 1184-85 (10th Cir. 1991) (all cases reviewing the choice of the most analogous guideline pursuant to USSG § 2X5.1 without invoking the provisions of 18 U.S.C. § 3553(b)).

§ 991(b)(1)(B) (1994).  The second goal of maintaining flexibility in sentencing, <u>see</u> <u>id</u>., is achieved by exercise of the discretion provided in the guidelines.

In <u>Osborne</u>, we commented that attempting to fashion a sentence pursuant to USSG § 2X5.1 is frequently similar to attempting to determine which round hole best accommodates a square peg.  The district court undoubtedly encountered this problem in sentencing Allard.  However, the statutory structure of the guidelines and the guidelines themselves reflect the substantial discretion placed in the district judge in making such sentencing decisions.  Thus, we affirm the district court's decision to apply the involuntary manslaughter guideline to Allard's case, but we reverse the district court's addition of the aggravated assault specific offense characteristics to Allard's offense level.  We remand the case for resentencing in accordance with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.