**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-41360
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

STEVE JOHN CALBAT,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
Corpus Christi Division
_____

September 18, 2001

Before DAVIS and JONES, Circuit Judges, and BARBOUR, District
Judge*,

W. EUGENE DAVIS, Circuit Judge:

Steve John Calbat appeals various aspects of his sentence
imposed after he pled guilty to intoxication assault, a violation
of 18 U.S.C. §§ 7 and 13, the Assimilative Crimes Act, involving
§49.07 of the Texas Penal Code.  Based on our conclusion that the
district court abused its discretion in setting the timing of
restitution payments, we vacate this aspect and remand for further
consideration of restitution.  In all other respects, Calbat's
sentence is affirmed.

---

*District Judge of the Southern District of Mississippi,
sitting by designation.

I.

On July 1, 2000, Steve John Calbat drove his vehicle while he was intoxicated and struck Robert Hanson, a ranger at the Padre Island National Seashore Park. Hanson had just moved his car near the entrance to the park when he saw the lights of another car approaching. Calbat's car came over the curb and hit Hanson's car. Hanson had put his left leg back inside of his car and was facing Calbat's car when he was struck. Hanson suffered extensive injuries in the accident; two of his ribs were broken, and his right leg had to be amputated between the knee and ankle. Calbat asserted that the accident occurred when he had reached and looked down and lost control of the vehicle.

Calbat was indicted on one count of intoxication assault, a violation of § 49.07 of the Texas Penal Code and 18 U.S.C. §§ 7 and 13, the Assimilative Crimes Act (the "ACA"). Calbat pleaded guilty to the charge contained in the indictment in accordance with a written plea agreement. In this agreement, the Government agreed to recommend that Calbat receive a sentencing reduction for acceptance of responsibility and the minimum applicable Guidelines sentence.

The district court agreed with the probation office's determination that the guideline that was most analogous to the Texas offense of intoxication assault was U.S.S.G. § 2A2.2(a), the aggravated-assault guideline. Under the provisions of that guideline, the district court then upwardly adjusted the offense level on the grounds that Calbat had caused serious bodily injury

2

and had used more than minimal planning in attempting to conceal the offense. The latter enhancement was based on a finding that Calbat had tried to conceal the crime by fleeing. The district court granted Calbat a downward adjustment for acceptance of responsibility. These adjustments resulted in a sentencing range of 33-41 months. The district court sentenced Calbat to 36 months in prison and a 3-year term of supervised release. The district court also ordered Calbat to make restitution in the amount of $250,000 over the course of his prison term and supervised release. Calbat filed a timely notice of appeal.

## II.

Calbat argues that the district court erred in its application of the guidelines in determining his sentence. Calbat's main argument is that the district court erred in selecting the aggravated assault guideline, § 2A2.2, as the most analogous guideline applicable to the Texas offense of intoxication assault. He contends that the involuntary manslaughter guideline, at § 2A1.4, is more analogous to his conduct because it, like the Texas Penal Code provision for intoxication assault, § 49.07, encompasses recklessly driving a vehicle while intoxicated. We disagree.

The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves. Lewis v. United States, 523 U.S. 155, 160, 118 S. Ct. 1135, 1139 (1998). The ACA provides that the defendant shall be guilty of a "like offense" and subject to a "like punishment" as that provided

3

by state law. 18 U.S.C. § 13(a). Consequently, "state law fixes the range of punishment, but the Sentencing Guidelines determine the actual sentence within that range." United States v. Marmolejo, 915 F.2d 981, 984 (5th Cir. 1990). If there is no guideline for a particular offense, including an ACA offense, the court is to use "the most analogous offense guideline." § 2X5.1 and comment. This court reviews a district court's determination of the most analogous guideline under the de novo standard. United States v. Hornsby, 88 F.3d 336, 338 (5th Cir. 1996).[1]

The background comment to § 2X5.1 suggests that the most analogous guideline is the one that covers the "type of criminal behavior" of which the defendant was convicted. "Whether there is a sufficiently analogous guideline to a particular crime is generally a task of comparing the elements of the defendant's crime of conviction to the elements of federal offenses already

---

[1] We acknowledge the logic of the approach adopted by the 8th Circuit in United States v. Osborne, 164 F.3d 434 (8th Cir. 1999) and United States v. Allard, 164 F.3d 1146 (8th Cir. 1999). The Eighth Circuit reviews the district court's decision as to whether there is a sufficiently analogous guideline under U.S.S.G. § 2X5.1 de novo, but the decision as to which of two or more sufficiently analogous guidelines is the most analogous with due deference. Both Osborne and Allard involved convictions for vehicular battery resulting from drunk driving. The same district court and appeals panel decided both cases. The cases held that both the aggravated assault guideline and the involuntary manslaughter guideline were sufficiently analogous to the assimilated crime of vehicular battery. In Osborne, the defendant's sentence under the aggravated assault guideline was affirmed. In Allard, the defendant's sentence under the involuntary manslaughter guideline was affirmed, although the district court's decision to add the enhancements from the aggravated assault guideline was reversed. However, we are bound by prior precedent in this circuit requiring de novo review of this inquiry.

4

covered by a specific guideline." United States v. Nichols, 169 F.3d 1255, 1270 (10th Cir.), cert. denied, 528 U.S. 934, 120 S.Ct. 336 (1999). Calbat pled guilty to intoxication assault, which is a third degree felony under Texas Penal Code § 49.07. The elements of intoxication assault are that a person, by accident or mistake, while intoxicated, operates a motor vehicle and by reason of that intoxication causes serious bodily injury to another. Although the federal assault statute at 18 U.S.C. § 113 does not specifically address driving while intoxicated, it does contain a provision which closely matches the crime of intoxication assault. Section 18 U.S.C. 113(a)(6) punishes "assault resulting in serious bodily injury."

In contrast to the other forms of aggravated assault under 18 U.S.C. §113 (assault with intent to commit murder, §113(a)(1), with intent to commit any felony except murder, §113(a)(2), with a dangerous weapon, with intent to do bodily harm, §113(a)(3)), aggravated assault involving serious bodily injury is a general intent crime. United States v. Davis, 237 F.3d 942, 944 (8th Cir. 2001), United States v. Benally, 146 F.3d 1232, 1237-38 (10th Cir. 1998). A specific intent to do harm is not an element of the offense. Id. Accordingly, the voluntary consumption of alcohol followed by the operation of a motor vehicle while in a state of voluntary intoxication can satisfy the mens rea element of a violation under § 113(a)(6). United States v. Loera, 923 F.2d 725, 727 (9th Cir. 1991); United States

v. Osborne, 164 F.3d 434, 440 (8th Cir. 1999). This is sufficiently analogous to the Texas crime of intoxication assault for which no culpable mental state is required. Stidman v. Texas, 981 S.W.2d 227, 230 (Tex. Crim. App. 1998). The guideline provision for 18 U.S.C. § 113 is § 2A2.2, the provision for aggravated assault applied by the district court.

We reject Calbat's argument contending that the most analogous guideline to the offense of intoxication assault is that for involuntary manslaughter at § 2A1.4. The involuntary-manslaughter guideline does address the specific behavior of driving while intoxicated. Application note 1 to § 2A1.4 provides that a homicide resulting from driving while intoxicated should be considered reckless conduct and will thus receive a base offense level of 14. § 2A1.4 (comment) n.1. However, the involuntary manslaughter guideline contains an element not present in this case, the death of the victim. We acknowledge the anomaly that the use of the aggravated assault guideline results in a higher sentence than the use of the involuntary manslaughter guideline. However, it is not our role to second guess the sentences established in the guidelines.

Accordingly, we find that the most analogous guideline applicable to the crime of intoxication assault under the Texas Penal Code is § 2A2.2, aggravated assault.

### III.

Calbat next argues that the district court engaged in

6

impermissible double-counting by enhancing his sentence based on the severity of Hanson's injuries because "the injury was already the reason for using the aggravated assault guideline instead of the driving while intoxicated guideline." This circuit has recognized that the guidelines do not contain a general prohibition against double-counting. United States v. Box, 50 F.3d 345, 359 (5th Cir. 1995). Rather, double-counting is prohibited only if it is specifically forbidden by the particular guideline at issue. Id. The prohibition must be in express language. Id. There is no such prohibition against the enhancement of which Calbat complains. Thus, even if it is assumed for the sake of argument that this enhancement constitutes double-counting, there is still no error.

IV.

Calbat's final sentencing-related argument is that the district court erred in enhancing his sentence by two levels under § 2A2.2(b)(1), based on a finding that it involved more than minimal planning. Section 2A2.2(b)(1) provides for a two-level increase of the offense level if the offense involves "more than minimal planning." "More than minimal planning" is defined in the commentary to § 1B1.1. See § 2A2.2, comment. (n.2). According to the commentary to § 1B1.1, this enhancement should be applied if the defendant undertook "more planning than is typical for commission in simple form" or if "significant affirmative steps were taken to conceal the offense." § 1B1.1, comment. (n.1(f)). Whether a defendant engaged in more than

7

minimal planning is a fact question that is reviewed for clear error. United States v. Lage, 183 F.3d 374, 384 (5th Cir. 1999), cert. denied, 528 U.S. 1163 (2000). A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. United States v. Watson, 966 F.2d 161, 162 (5th Cir. 1992).

The district court gave Calbat the enhancement for more than minimal planning "not because of the planning prior to the offense, but the planning to cover up the offense that occurred after the striking of the vehicle and Mr. Hansen." The district court's determination that Calbat attempted to flee the scene of the crime was supported by adequate evidence and based on a credibility determination between the witnesses and is thus entitled to deference. See United States v. Huskey, 137 F.3d 283, 291 (5th Cir. 1998). Accordingly, the district court's decision to enhance Calbat's sentence on the basis that it involved more than minimal planning is not clearly erroneous.

V.

Calbat next raises three issues related to the district court's order of restitution. The district court ordered Calbat to pay a total of $250,000 in restitution to Hanson and the United States. The judgment ordered restitution to begin 60 days after the date of his confinement and that no more than 20 percent of the funds in Calbat's inmate trust fund be withheld for this purpose. Calbat is required to pay the balance due upon

8

his release from custody in equal monthly installments during his three year term of supervised release. Additionally, Calbat was ordered to pay the full amount of his 401k annuity towards restitution.

Calbat contends that the district court erred in ordering him to pay the full $2,800 of his § 401K retirement plan towards restitution because this order was in violation of ERISA's anti-alienation clause, citing <u>United States v. Smith</u>, 47 F.3d 681 (4th Cir. 1995). Although Calbat has not waived this issue, as contended by the Government, Calbat also made no objections to the surrender of his § 401K account. The plain-error standard of review thus applies. Under this standard, this court may address Calbat's argument only if (1) there is an error, (2) the error is plain, and (3) the error affects substantial rights. <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993). If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. <u>Id</u>. at 735-36.

This issue is controlled by <u>United States v. Gaudet</u>, 966 F.2d 959, 954 (5th Cir. 1992). Like Calbat, Gaudet argued that the district court erred in ordering him to relinquish his pension to satisfy a restitution obligation because this order violated ERISA's anti-alienation provision. 966 F.2d at 963. Gaudet had not objected to this order in the district court. <u>Id.</u>

The court held that, although Gaudet had a "substantial legal argument," this error was not obvious and thus did not meet the plain-error standard. Id. at 963-64. Because Calbat is presenting the same argument under the same standard of review, he is not entitled to relief on this issue.

Calbat next challenges the district court's decision not to credit him for insurance proceeds received by Hanson. Under the Victim and Witness Protection Act, restitution may be ordered to victims of an offense. United States v. Hughey, 147 F.3d 423, 437 (5th Cir. 1998); 18 U.S.C. § 3663. An order of restitution must be limited to the loss stemming from the specific conduct supporting the conviction. Hughey, 147 F.3d at 437. Section 3664(j)(2) provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim" in any state or federal civil proceeding.

The availability of such an offset depends upon the payment made in the settlement, whether the claims settled involved the same acts of the defendant as those underlying his criminal conviction, and whether the payment satisfies the penal purposes the court sought to impose. United States v. All Star Indus., 962 F.2d 465, 477 (5th Cir. 1992). It is the defendant's burden to establish an offset to a restitution order. United States v. Sheinbaum, 136 F.3d 443, 449 (5th Cir. 1998).

Calbat has not met this burden. The record contains no documentation to detail the terms of this settlement. The only

mention of these insurance proceeds is Hanson's testimony at sentencing that Calbat's insurance company offered him $25,000, which was Calbat's policy limit. Further, even if Calbat had met this burden, the record shows that Hanson's medical bills exceeded the amount of restitution imposed. Calbat has not made a showing that the restitution order was illegal.

Calbat next argues that the district court erred in ordering him to pay the full amount of the $250,000 restitution over the course of his three-year term of imprisonment and his three-year term of supervised release. The legality of the district court's order of restitution is reviewed de novo. Hughey at 436. Once this court determines that a particular restitution award is permitted by the pertinent law, the propriety of that award is reviewed for an abuse of discretion. Id. Under this standard, this court will reverse a restitution order only if the defendant shows that it is probable that the court failed to consider one of the mandatory factors and the failure to consider the factor influenced the court. United States v. Schinnell, 80 F.3d 1064, 1070 (5th Cir. 1996). Those factors are: the financial resources and other assets of the defendant; projected earnings and other income of the defendant; and any financial obligations of the defendant, including obligations to dependents. 18 U.S.C. § 3664(f)(2). In United States v. Myers, 198 F.3d 160, 169 (5th Cir. 1999), we held that the MVRA (Mandatory Victims Restitution Act) "requires that the district court consider the 'financial resources of the defendant' in determining the schedule under

11

which the restitution is to be paid.  18 U.S.C. § 3664(f)(2)(A)."

According to the PSR, at the time of the offense, Calbat was employed as a purchasing manager and earned approximately $39,000 a year.  His only assets were a 1995 Pontiac Grand Prix valued at $4800 and his § 401K account, which was valued at $2800. Calbat's debts amount to approximately $1,200.  Under the payment schedule imposed by the district court, the average yearly payment required of him, over $41,000, is greater than his yearly income at the time of the offense.  The district court noted at sentencing that "I frankly do not anticipate that he would ever be able to pay the full $250,000."  Absent a large windfall, Calbat will not be able to pay the full amount of restitution within the time ordered by the district court.  This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of Calbat's supervised release.  Calbat could thus be sent back to prison for failure to make restitution payments in a timely manner.  Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution order.


VI.

For the foregoing reasons, we VACATE the sentence and REMAND for resentencing consistent with this opinion.


12