# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60855

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HARVEY ANDRE FRANKLIN, SR.,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2014

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 4:12-CR-61-1

Before KING, JOLLY, and COSTA, Circuit Judges.

PER CURIAM:*

Harvey Franklin, Sr. pled guilty to a three-count information charging him with conspiracy to receive a bribe, bribery concerning programs receiving federal funds, and embezzlement. Franklin challenges the district court's restitution award and its order that he pay a portion of that award immediately, as a lump sum. We affirm.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60855

## I. Background

Franklin committed his crimes while serving as superintendent of the Greenville Public School District ("GPSD"), a public school district located in Mississippi. At Franklin's behest, GPSD entered into a consulting services contract with Teach Them to Read, Inc., a company owned by Edna Goble. The purported purpose of the contract was to assist GPSD with developing and implementing a reading program to identify and assist at-risk students. Under the contract GPSD purchased hundreds of reading units, which consisted of a small, plastic, Walmart-caliber, bin containing approximately forty books, reading manuals, and an outline. GPSD also purchased consulting services. GPSD paid for the reading program with more than $1.4 million in grant money from the U.S. Department of Education ("DOE").[1]

In August 2012, Franklin pled guilty to a three-count information. Franklin admitted that he accepted approximately $272,294 in bribes or kickbacks from Goble and used his position as superintendent to advocate for the use of Goble's reading program in the GPSD. Franklin admitted that "the actual value of the services and products provided by Goble to [GPSD] was substantially lower than the amounts charged to [GPSD] and paid to Teach Them to Read." For example, GPSD bought 851 reading units at an "inflated price" of $900 each and seventy-seven supplemental reading units at a cost of $1,400 each. GPSD also paid for 122 days of Goble's consulting services at a rate of $1,600 per day.

The probation office prepared a pre-sentence report ("PSR") in January 2013. The probation office determined that the amount of restitution applicable to Franklin should be $1,433,247, which represented the entire amount of federal grant money paid to Goble and her company.

---

[1] The only victim in this case is the U.S. Department of Education.

2

No. 13-60855

In February 2013, Franklin objected to several portions of the PSR, including the restitution amount, arguing that the reading program had "some value." He did not object to the PSR's description of his financial circumstances, including the amount or availability of several liquid assets. Based on Franklin's objections, the probation office modified the PSR in several ways and issued a revised PSR on October 11, 2013. The only unresolved objection to the PSR was Franklin's argument that the restitution amount was inflated because it included the value of the reading program.

Thereafter, the district court held a lengthy sentencing hearing. During that hearing, the court heard testimony and argument related to the reading program's value and received several items of evidence, including one of the hundreds of bins of reading materials. In that hearing, a special agent with the DOE's Office of Inspector General ("OIG") testified in support of the government's request for restitution in the full amount of the federal grant. The agent stated that the DOE would not have awarded any of the federal grant monies to GPSD, which were eventually paid to Goble's company, because the contract was based on illegal fraud and kickbacks. When asked about the reading program's value, the agent stated that items purchased from Goble's company were not itemized and that the agent "never really got a detailed account." As a result, the agent was unable to determine the precise value of the reading materials provided to GPSD.

Nevertheless, the agent was able to uncover several metrics to help the district court determine the DOE's actual loss. The agent testified that GPSD could have used a well-known, reputable vendor and purchased similar reading services for "dramatically less." For example, the agent relayed that a larger school district in Mississippi purchased a program similar to Goble's program from a "notable and nationally used" company for only $205,000, a number sharply below the $1.433 million spent by GPSD. This program

3

included the standard three to five days of training rather than the 122 days charged by Goble's program. The agent also testified that another notable company charged approximately $2,600 for a box of two to three *hundred* hardback books (plus other accessories like activities and lesson plans), and only eight boxes were needed for a single K-8 school. Such pricing resulted in a cost of around $20,000 per school. In addition to this industry experience, employees and teachers at GPSD estimated that each bin of materials provided by Goble's company was worth $50 to $250, significantly less than the $900 to $1,400 that GPSD paid.

With respect to the books provided by Goble's company, the agent found copies of the books on the Internet for one dollar or less. The books also could have been purchased in bulk to further reduce pricing. The agent also testified that many of the reading manuals in the bins were printed at GPSD schools using GPSD equipment and supplies and, thus, the value of those materials should not be deducted from the amount of total loss.

The district court asked Franklin what evidence he had to support a dollar value for the reading program. Initially, Franklin's counsel maintained that Franklin did not carry the burden of proof and had no evidence as to the DOE's actual loss. Upon further inquiry from the district court, Franklin took the stand and testified on his own behalf. He estimated that the bins were worth $400 to $1,600 each, for an average value of $900. Franklin said that, in researching the market cost of a reading program, he found one company that charged $1,400 for three kits (or $467 per kit). Franklin opined that Goble's price was higher because GPSD was paying for "analysis," "expertise," "training," and a particular "end result."

After hearing testimony from the OIG agent and Franklin, and after reviewing the evidence, including a representative bin of books, the district court stated that it could not "fathom" that the plastic bin, papers, and few

books was worth $900 but concluded that it would be inappropriate to award restitution in the full amount of the DOE grant. After acknowledging that the reading program's value was difficult to ascertain, the district court used the evidence from the hearing to estimate the reading program's value. To reach its estimate, the court looked into the bin of books placed into evidence and noted that each book's cover value was between $4.99 and $5.99. The district court assumed that each book was worth $6, counted thirty-eight books, and found that a single bin's value was $228. The court rounded up to $250 for the value of a single bin, noting that $250 was the maximum value estimated by GPSD teachers and employees. The court then multiplied this value by the number of bins GPSD purchased, i.e., 928, and determined that GPSD gained $232,000 in benefits from Goble's reading program. Subtracting this amount from the total amount DOE gave to GPSD to pay for Goble's program yielded an actual loss of $1,201,247. The district court ordered restitution in this amount.

The district court discredited Franklin's estimate for a bin's value, noting that $1,600 was more than Goble's company charged for any bin. The court also made clear that it was assessing "no value to any increase in test scores" of GPSD students "because [there is] simply . . . no nexus whatsoever . . . that a teacher utilizing the contents of this [bin] was the proximate cause of an increase in test scores two years later."

The district court sentenced Franklin to a within-guidelines sentence of 76 months of imprisonment and ordered him to pay $1,201,247 in restitution. The district court noted that it had carefully reviewed Franklin's financial statements and found that he had $92,000 in liquid assets. The court then ordered Franklin to make an immediate, lump-sum payment of $75,000 towards the restitution amount.

No. 13-60855

Franklin did not object to the lump-sum payment at sentencing, but several days after the judgment was entered, he filed a motion to reconsider the lump-sum payment. He argued that his financial circumstances had changed and that his liquid assets had been exhausted. The district court denied Franklin's motion for reconsideration because Franklin failed to object the PSR's description of his liquid assets before or during sentencing and, thus, failed to carry his burden to demonstrate his own financial resources.

Franklin brought this instant appeal. Franklin argues that the district court erred in: (1) determining the amount of restitution and (2) ordering a $75,000 lump-sum payment.

## II.  Restitution Award[2]

Franklin appeals the amount of restitution, claiming that it exceeds the DOE's actual losses. Specifically, Franklin asserts that the restitution award does not properly account for the value of materials and services that GPSD received from Goble's company.

Here, the DOE is entitled to restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"). The MVRA limits restitution to the loss actually caused by the offense of conviction. *See* 18 U.S.C. § 3663A(a)(1), (a)(2), (c)(1) (requiring a district court to award restitution to victims "directly and proximately harmed" by a defendant's offense); *United States v. De Leon*, 728 F.3d 500, 506 (5th Cir. 2013) *cert. denied*, 134 S. Ct. 1524 (2014). The amount

---

[2] We review the legality of the district court's order of restitution de novo. *United States v. Calbat*, 266 F.3d 358, 366 (5th Cir. 2001). After we determine that a particular restitution award is permitted by law, we review the propriety of that award for an abuse of discretion. *Id.* "District courts are accorded broad discretion in ordering restitution." *United States v. Aubin*, 87 F.3d 141, 150 (5th Cir. 1996). A district court abuses its discretion when its ruling is "based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Crawley*, 533 F.3d 349, 358 (5th Cir. 2008) (quotation marks and citation omitted).

of restitution must be based on a preponderance of the evidence. *De Leon*, 728 F.3d at 506–07; 18 U.S.C. § 3664(e). Here, the government proved that the DOE spent $1,433,247 on Franklin and Goble's scheme. This fact is uncontested. What is contested is whether Goble's reading program provided "some value" such that the *actual* loss sustained by the DOE is less than $1.433 million.

The government has the burden of proving a victim's actual loss. 18 U.S.C. § 3664(e). However, in prior cases, "we have shifted to the defendant the burden to show any entitlement to a credit for value bestowed on the victim." *De Leon*, 728 F.3d at 506; *see also United States v. Sharma*, 703 F.3d 318, 325–26 (5th Cir. 2012) (collecting cases); *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) ("Logically, the burden of proving an offset should lie with the defendant."); *United States v. Calbat*, 266 F.3d 358, 365 (5th Cir. 2001) (same). This burden-shifting occurs because the MVRA "allocates the various burdens of proof among the parties who are best able to satisfy those burdens and who have the strongest incentive to litigate the particular issues involved." *Sheinbaum*, 136 F.3d at 449; *see also* 18 U.S.C. § 3664(e) ("The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."). With respect to reducing a restitution award, the defendant's "desire to lower his restitution order gives him the incentive to litigate such mitigating circumstances." *Sheinbaum*, 136 F.3d at 449. Moreover, the defendant should know the value that he has already provided to the victim "so the burden should fall on him to argue for a reduction in his restitution order by that amount." *Id.*

Franklin did not meet his burden to show that he is entitled to any credit for the value bestowed on the DOE. He put up no evidence that the *DOE* lost anything less than $1,433,247. He did, however, offer evidence and argument

No. 13-60855

that the *GPSD* retained "some value" from Goble's reading program. The district court disbelieved much of this evidence but still gave Franklin credit for $232,000, based on the court's reasoned estimate of the value of the bins and books.[3] After crediting this amount, the district court ordered Franklin to pay $1,201,247 in restitution.

After reviewing the record in the context of the burdens of proof, we are satisfied that the government provided sufficient evidence that the DOE lost at least the $1,201,247 found by the district court. Franklin did not submit credible evidence refuting that conclusion. *Cf. Sheinbaum*, 136 F.3d at 450 ("[H]aving failed to present valuation evidence to the district court, the defendants waived their . . . claim" for credit.). Accordingly, the district court did not abuse its discretion in declining to further reduce the loss amount.[4] *Cf. De Leon*, 728 F.3d at 507 ("We review preserved error as to the quantum of a restitution award for abuse of discretion.").

## III. Lump-Sum Payment

Franklin argues that the district court erred by ordering him to make a $75,000, lump-sum payment that was due sixty days from the date of judgment.

---

[3] We question whether value retained by the GPSD mitigates any losses suffered by the actual victim in this case, the DOE. *Cf. United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011) (affirming a restitution award, notwithstanding the fact that patients may have received some therapeutic benefit from the defendants' medical services, because Medicare itself—not the patients—was the victim of the fraud and would not have paid for any of the treatment absent those fraudulent misrepresentations). But, the government has not made that argument, so we assume for the purposes of this appeal that value retained by the GPSD is also value retained by the DOE.

[4] Franklin's arguments to the contrary depend on the government bearing the burden of proof as to the reading program's value. However, as noted above, this was Franklin's burden, which he failed to carry.

The MVRA "requires that the district court consider the financial resources of the defendant in determining the schedule under which the restitution is to be paid." *Calbat*, 266 F.3d at 366 (quotation marks omitted); *see* 18 U.S.C. § 3664(f)(2)(A). This Court will reverse a restitution order only where it is probable that (1) the district court failed to consider the defendant's financial resources *and* (2) the district court's failure to consider the defendant's resources influenced the court's restitution award. *Calbat*, 266 F.3d at 366.

Here, the district court clearly considered Franklin's financial resources. In fact, the court specifically noted at sentencing that it had carefully reviewed Franklin's financial statements and found that he had $92,000 in liquid assets. This conclusion is consistent with the PSR, which listed approximately $90,000 in liquid assets. Franklin did not object to the PSR's description of his assets when it was issued in January 2013 or when it was revised and re-issued in mid-October 2013. He also failed to object to the PSR at sentencing, either before or after the district court made its finding that his liquid assets exceeded $90,000. It was only days after the court entered its judgment ordering Franklin to pay a lump-sum toward the restitution amount that Franklin advised the district court that his assets were depleted. Franklin's assets did not deplete after his sentencing; they depleted between April 2013 and October 2013—well before his mid-November sentencing. And, all but $3,000 of the debits on his accounts occurred before the PSR was revised in October 2013. Given these facts, we cannot say that the district court abused its discretion in ordering the lump-sum award at sentencing.

To the extent that Franklin argues that the district court erred in not granting his motion to reconsider the lump-sum restitution order, such argument is without merit. A district court may adjust a restitution-payment schedule when there has been a "material change in the defendant's economic

circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k) (providing procedural requirements). However, as noted above, Franklin's financial situation did not "change" from the time of sentencing until the time of his motion to reconsider; it was static during that time. Franklin's financial situation changed materially between April and October 2013, well before his November 2013 sentencing. *See United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000) ("A change of the sort contemplated by the statute is identified by an objective comparison of a defendant's financial condition before and after a sentence is imposed."). In fact, all expenses save one occurred at least a month before the revised PSR issued. Without a material change in Franklin's economic circumstances, § 3664(k) does not apply, and the district court did not err in denying Franklin's motion for reconsideration.

Second, Franklin had the burden to demonstrate his financial resources. 18 U.S.C. § 3664(e). These financial resources were reflected in the PSR. Franklin did not object to the PSR's statement of his financial situation, before or during the sentencing proceeding. Absent any objection from Franklin, the district court rightly presumed that the PSR was accurate, adopted the PSR's description of Franklin's financial resources, and ordered a lump-sum payment based on that finding. *See United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009) ("Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." (quotation marks omitted)); *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002) ("[I]nformation in the pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant

fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable." (quotation marks omitted)).

We cannot say that the district court abused its discretion in ordering the lump-sum payment or declining to adjust that payment when Franklin knew of his changed circumstances well in advance of sentencing and failed to inform the court of his decreased finances before or during sentencing.[5]

## IV. Conclusion

For the reasons stated above, we AFFIRM the district court's orders.

AFFIRMED.

---

[5] Franklin challenged the lump-sum order for the first time in a motion to reconsider. We need not determine whether an issue raised for the first time on a motion for reconsideration is preserved for appellate review and, thus, subject to an abuse-of-discretion standard rather than a plain-error standard because Franklin's claim fails under either standard.