JENNIFER WALKER ELROD,
Circuit Judge, concurring in the judgment only:
I write separately to express my view that United States v. Calbat, 266 F.3d 358 (5th Cir.2001), governs this case and establishes that the district court plainly erred by imposing a restitution obligation on Scales which he could not reasonably be expected to pay and of which non-payment subjects him to the threat of incarceration. Because Scales has not briefed the fourth prong of plain error review, I concur in the decision to affirm the district court’s order.
The majority opinion correctly concludes that United States v. Miller, 406 F.3d 323 (5th Cir.2005), “controls to the extent of its holding, which is that a district court does not plainly err by ordering restitution be payable immediately if it then also provides a realistic payment schedule.” However, because Miller “did not address whether a restitution order that required the balance be paid in one final balloon obligation 'before the end of supervised release affected whether the schedule was ‘realistic,’” the majority opinion properly looks to Calbat for the validity of that final obligation.
In Calbat, the district court ordered Cal-bat to pay $250,000 in restitution, to begin sixty days after the date of his confinement, with no more than twenty percent of the funds in his inmate trust fund to be withheld for that purpose. 266 F.3d at 365. Calbat was ordered to pay the balance due upon his release in equal monthly installments during his three-year term of supervised release. Id. We vacated this restitution order because we held that the payment schedule was unrealistic:
According to the PSR, at the time of the offense, Calbat was employed as a purchasing manager and earned approximately $39,000 a year. His only assets were a 1995 Pontiac Grand Prix valued at $4800 and his § 401K account, which was valued at $2800. Calbat’s debts amount to approximately $1,200. Under the payment schedule imposed by the district court, the average yearly payment required of him, over $41,000, is greater than his yearly income at the time of the offense. The district court noted at sentencing that “I frankly do not anticipate that he would ever be able to pay the full $250,000.” Absent a large windfall, Calbat will not be able to *242 pay the full amount of restitution within the time ordered by the district court. This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of Calbat’s supervised release. Calbat could thus be sent back to prison for failure to make restitution payments in a timely manner. Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution order.
Id. at 366.
Applying Calbat’s methodology — spreading Scales’s total restitution of $29,427.27 over his sixty months of imprisonment and thirty-six months of supervised release— results in monthly payments of about $306. These payments would be unrealistic. Scales’s presentence report (PSR) notes that he suffers from severe mental and emotional health issues, which, together with his prior incarcerations, have limited his ability to maintain employment. Before his arrest, Scales had no earned income and received only $699 in monthly SSI benefits, which was subject to garnishment for child support payments. Scales has no assets, multiple delinquent loans, and outstanding child support obligations. Based on these facts, the PSR concluded that Scales did not have the financial resources to make any restitution payments. Thus, just as in Calbat, it is unrealistic to expect Scales to be able to pay his restitution in the time allotted.[1]
Of course, as the majority opinion notes, Scales was not ordered to pay off his restitution in equal installments as in Calbat. Instead, Scales is required to pay $100 per month with the remainder as a balloon payment at the end of his term of supervised release. This difference is immaterial, however, because Scales is no more likely to be able to pay $29,000 in restitution at the end of his thirty-six months of supervised release than he is to be able to spread those payments over the thirty-six months. Calbat’s reasoning and holding could just as well have been written about Seales:
Absent a large windfall, [Scales] will not be able to pay the full amount of restitution within the time ordered by the district court. This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of [Scales’s] supervised release. [Scales] could thus be sent back to prison for failure to make restitution payments in a timely manner. Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution order.
Id. Given the direct applicability of Cal-bat’s holding, I would hold that the district court here likewise erred in setting an unrealistic payment schedule for Scales as a condition of supervised release, sueh that non-payment could result in his re-imprisonment, and that the error was plain.
The majority opinion, however, declines to apply Calbat’s method of calculation and instead adopts a novel approach, evaluating the restitution payment schedule as if the district court had only ordered the *243 periodic payments without the lump sum at the end. Although the district court’s judgment orders that “[a]ny unpaid balance of the restitution ordered by .this judgment shall be paid in full 60 days prior to the termination of the term of supervised release,” the majority opinion “considers] the balloon payment to be a placeholder, or a way in which a final accounting may be done, a means by which payment of the largest amount of restitution possible can be made a condition of supervised release” by “leaving] open the possibility that [the district court] might require an additional payment near the end of supervised release.” The majority opinion concludes that the $100 monthly payments are reasonable in isolation, and that imposition of the balloon payment was not plain error because Scales’s failure to pay it will not result in automatic imprisonment. The majority opinion states that if Scales cannot pay the balloon payment at the end of his term of supervision, “further orders from the district court can be entered,” and “[w]hatever is ultimately ordered by the district court, an appeal can be taken at that time to contest any of those new rulings.”
The majority opinion’s approach is contrary to our precedent, including the cases on which the majority opinion relies. In those cases, we have consistently evaluated the reasonableness of the payment schedule as a whole, not the reasonableness of each required payment. See Calbat, 266 F.3d at 366 (“Absent a large windfall, Cal-bat will not be able to pay the full amount of restitution within the time ordered by the district court. This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of Calbat’s supervised release— Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution oriler.”) (emphasis added); Miller, 406 F.3d at 328 (“In determining the manner and schedule with respect to which restitution will be paid, ... a court must consider ... the defendant’s financial resources.”) (emphasis added).
In the face of this uniform precedent, the majority opinion does not cite to any case in which we have avoided addressing the reasonableness of the restitution payment schedule as a whole by determining that some of the required payments are realistic and that any unrealistic payments need not yet be addressed. This approach is not only novel; it also violates our longstanding policy against piecemeal appeals by preventing Scales from challenging the requirement that he make a patently unreasonable balloon payment at the time the condition is imposed and instead suggesting that he can separately appeal a future order enforcing this condition. See, e.g., Switzerland Cheese Ass’n, Inc. v. E. Horne’s Mkt, Inc., 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (“Unlike some state procedures, federal law expresses the policy against piecemeal appeals.”). The majority opinion attempts to pragmatically reconcile the Mandatory Victims Restitution Act’s requirements that the full amount of restitution be ordered and that the payment schedule be reasonable in light of the defendant’s ability to pay, but by encouraging multiple appeals, the resulting approach is far from practical. Indeed, the long-established principle behind the policy against piecemeal appeals is the impracticality and inefficiency of bringing separate challenges that could otherwise be brought together. See Forgay v. Conrad, 47 U.S. 201, 205, 6 How. 201, 12 L.Ed. 404 (1848) (“In limiting the right of appeal to final decrees, it was *244 obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit; and to have the whole case and every matter in controversy in it decided in a single appeal.”). The majority opinion sets no limit on the application of its approach so as to prevent every required payment from providing the basis of an appeal, but even where it results in only two appeals, the majority opinion’s approach unnecessarily increases the demands on judicial resources.
Moreover, as the majority opinion acknowledges, our precedent dictates that the possibility of future modification of a supervised release condition has no bearing at all on prongs one through three of plain error review and is only a factor under prong four. United States v. Prieto, 801 F.3d 547, 554 (5th Cir.2015) (“While the modifiable nature of supervised-release conditions does not insulate them from third-prong scrutiny, it weighs heavily in our consideration of the fourth prong.”); see also United States v. Caravayo, 809 F.3d 269, 275 n. 4 (5th Cir.2015) ,(“[T]he possibility of future judicial modification has no bearing on whether the district court abused its discretion today.”). The majority opinion nevertheless disregards this precedent, concluding that cases like Prieto “focus on the immediate and questionable effects on a defendant of a term of supervision,” whereas the majority opinion describes the balloon payment as “maintain[ing] the possibility that a larger amount can be paid ere the end of supervised release.”
This is a false distinction. The balloon payment does far more than “leave open the possibility that [the district court] might require an additional payment near the end of supervised release,” as the majority opinion characterizes it. The conditions imposed on Scales presently require him to pay off the balance of his restitution sixty days before the end of his term of supervised release. This requirement is already imposed in a binding court order, and is not a future “possibility.” The majority appears to suggest that Scales may disregard this requirement and trust that the district court will decide not to re-imprison him for the violation after inquiring into the reasons for his failure, as required in United States v. Payan, 992 F.2d 1387, 1396 (5th Cir.1993). But see id. (explaining that if the district court determines that the defendant “made all reasonable efforts to pay the fine or restitution but was still unable to do so through no fault of his own, the court must consider alternative means of punishment in lieu of more imprisonment” but imprisonment is still permitted “if alternative measures are not adequate to protect the government’s interest in punishment and deterrence”); Calbat, 266 F.3d at 366 (vacating unrealistic payment schedule based on possibility of future revocation of supervised release for non-payment). The majority opinion cites no authority suggesting that an unlawful condition of supervised release does not affect a defendant if the district court is unlikely to punish a violation of the condition. Nor does such a rule, which invites defendants to violate their supervised release conditions if punishment is unlikely, promote respect for the courts and the rule of law.
In sum, the restitution schedule ordered in this case is patently unrealistic. Indeed, the majority opinion does not suggest that Scales will be able to comply with the required payment schedule. Noncompliance subjects Scales to the threat of re-imprisonment. Under Calbat, therefore, the district court erred by imposing the *245 unrealistic payment schedule as a condition of supervised release, and the error was plain. The majority opinion avoids this conclusion only by creating a novel approach that is at odds with our precedent. I therefore do not join the majority opinion’s analysis of prongs one and two of plain error review.[2]
Nevertheless, I concur in the judgment because Scales has not briefed the fourth prong of plain error review. See, e.g., United States v. Rivera, 784 F.3d 1012, 1019 (5th Cir.) (‘We have ... refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong.”), reh’g denied, 797 F.3d 307 (5th Cir.2015). Accordingly, I concur in the judgment only.

. Although the Calbat panel did not do so, the majority opinion also calculates the annual payments Calbat would have owed if the restitution were spread over only the three years of supervised release, on the assumption that payments during incarceration would be negligible. Applying the same calculation to Scales produces average payments of approximately $817 per month, which, as in Calbat, exceeds Scales’s pre-incarceration income.

. The majority does not reach prong three of plain error review. Under our precedent, Scales has established that the district court’s error affects his substantial rights. See Prieto, 801 F.3d at 554 (noting that "the modifiable nature of supervised-release conditions does not insulate them from third-prong scrutiny”); Calbat, 266 F.3d at 366 (vacating sentence where Calbat "could” be sent back to prison if he did not make his required restitution payments).